## Case No. 1,082.

### BARTLETTE v. CRITTENDEN et al.

### [4 McLean, 300.] [1]

Circuit Court, D. Ohio. July Term, 1847.

LITERARY PROPERTY—DEDICATION—ABANDONMENT.

1. By the common law, a party had a property in his own manuscripts.

[Cited in Boucicault v. Fox, Case No. 1,691; Henry Bill Pub. Co. v. Smythe, 27 Fed. 926.]

2. And if they be in the possession of other persons, who are about to make an improper use of them, a court of chancery would inhibit such use.

[Cited in Boucicault v. Fox, Case No. 1,691; Henry Bill Pub. Co. v. Smythe, 27 Fed. 926.]

3. The principles in regard to a manuscript, may be applied to the invention of a machine.

4. It belongs to the inventor, and it will continue to be his property until he shall give it the public or abandons it.

5. Under our present law, a use of a machine for less than two years, before the application of a patent shall be made, does not invalidate the right.

6. A person who uses his own manuscripts for the purpose of instructing others, does not thereby abandon them to the public.

[Cited in Keene v. Wheatley, Case No. 7,644; Boucicault v. Hart, Id. 1,692.]

7. Nor does he abandon them, when his pupils are permitted to take copies.

[Cited in Boucicault v. Hart, Case No. 1,692.]

8. Such copies being intended for the purpose of instruction, as used, can be applied to no other purpose.

9. In the use, the intention of the owner of the manuscript can not be perverted or extended.

[In equity. Bill by R. M. Bartlette to restrain A. F. Crittenden and others from infringement of copyright. Injunction granted.]

Mr. Walker, for complainant.

Storer & Gwynn, for defendants.

OPINION OF THE COURT. This is an application to enjoin the defendants from printing, publishing, or selling a work denominated "An inductive and practical system of double-entry book-keeping, on an entirely new plan," on the ground that a material part of the manuscript, and the arrangement, were the work of the complainant, and were pirated from him by the defendants. It appears that the complainant for twelve years has been engaged in teaching the art of book-keeping, in the city of Cincinnati and other places. That he had reduced to writing the system he taught, on separate cards for the convenience of imparting instruction to his pupils; and that he permitted his students to copy these cards, with the view to their own advantage and to enable them to instruct others. That Jonathan Jones, being qualified in the school of the complainant, as

[1] [Reported by Hon. John McLean, Circuit Justice.]

a teacher, and having copied the manuscripts of the complainant, engaged, in connection with him, to teach a commercial school in St. Louis. While thus engaged, A. F. Crittenden, one of the defendants, entered the school at St. Louis as a student, and was permitted to copy the manuscripts of the complainant, in the possession of Jones; and from those manuscripts, with certain alterations, he made up the first ninety-two pages of the book, under the above title, which was published in Philadelphia, in connection with his brother, by E. C. & J. Biddle, two of the defendants, in the present year. The answers of the defendants either deny the allegations of the bill, or do not admit them, and call for proof of the facts stated. On this motion for an injunction the merits of the case have been discussed, with much research and ability.

This application is made under the 9th section of the act of congress of the 3d of February, 1831, [4 Stat. 438,] which provides, that "any person or persons who shall print or publish any manuscript whatever, without the consent of the author or legal proprietor first obtained, etc., shall be liable to suffer and pay to the author or proprietor, all damages occasioned by such injury," etc. And power is given to grant an injunction to restrain the publication. The first section of the act of the 30th of June, 1834, [4 Stat. p. 728, c. 157,] requires all deeds or instruments in writing for the transfer or assignment of copy-rights, to be acknowledged and recorded. At common law, independently of the statute, I have no doubt, the author of a manuscript might obtain redress against one who had surreptitiously got possession of it. And on general equitable principles, I see no objection to relief being also given, under like circumstances, by a court of chancery. But this is a proceeding under the statute.

The defendants contend that the complainant, by suffering copies of his manuscripts to be taken, abandoned them to the public. The principle is the same, it is alleged, in regard to copy-rights and patents. And that a consent or permission of the author to use the manuscripts, is as fatal to his exclusive right, as the consent of the inventor to use the thing invented. Rundell v. Murray, [Saunders v. Smith,] 3 Mylne & C. 711, 728, 730, 735; Millar v. Taylor, 4 Burrows, 186, [2303;] Barfield v. Nicholson, 2 Sim. & S. 1. To show the analogy between copy-right and patents, the defendants cited Whittemore v. Cutter, [Case No. 17,601;] Mellus v. Sillsbee, [Id. 9,404,] in which the question considered was, did the inventor suffer the thing patented to go into public use without objection? Walcot v. Walker, 7 Ves. 1; Platt v. Button, 19 Ves. 448; Wythe v. Stone, [Case No. 18,107.]

The 7th section of the act of the 3d of March, 1839, [5 Stat. 354,] declares that a purchaser from the inventor of the thing invented, before a patent is obtained, shall continue to enjoy the same right after the

obtainment of the patent as before it; and that such sale shall not invalidate the patent, unless there has been an abandonment, or the purchase has been made more than two years before the application for the patent. Before this act, a sale of the right would have been an abandonment to the public by the inventor. The decisions, therefore, referred to, do not apply to cases arising under this statute. A sale of the right is not an abandonment, if made within two years before the application for a patent, as the law now stands; and it may be a matter of some difficulty, within the above limitation of two years, to determine what act shall amount to an abandonment. Where the act is accompanied by a declaration, to that effect, there can be no doubt; but if a sale be not an abandonment, a mere acquiescence in the use of the invention would seem not to be. Within the two years, to constitute an abandonment, the intention to do so must be expressed or necessarily implied from the facts and circumstances of the case. It is a question of intention, as to the extent of the license, of which we must judge, as we are called to do in other cases. But the limitation of two years does not apply in this case, should a copy-right be considered in principle identical with an invention of a machine, as more than two years have elapsed since copies of the complainant's manuscripts were taken with his consent.

The question arises upon the facts stated, and must be decided on general principles. In the first place, there was no consent of the complainant, that his manuscripts should be printed. That they were not prepared for the press is admitted. They were without index or preface, although, as alleged, they may have contained the substantial parts of the complainant's system, which, in due time, he intended to print. Copies of the manuscripts were taken for the benefit of his pupils, and to enable them to teach others. This, from the facts and circumstances of the case, seems to have been the extent of the complainant's consent. It is contended that this is an abandonment to the public, and is as much a publication as printing the manuscripts. That printing is only one mode of publication, which may be done as well by multiplying manuscript copies. This is not denied, but the inquiry is, does such a publication constitute an abandonment? The complainant is no doubt bound by this consent, and no court can afford him any aid in modifying or withdrawing it. The students of Bartlette, who made these copies, have a right to them and to their use as originally intended. But they have no right to a use which was not in the contemplation of the complainant and of themselves, when the consent was first given. Nor can they, by suffering others to copy the manuscripts, give a greater license than was vested in themselves. In

England, if an invention be pirated and given to the public, it prevents an inventor from obtaining a patent. But this is not the construction of our laws. If an inventor of a machine sell it or acquiesce in its public use, not within the limitation of the two years, he forfeits his rights. He must be diligent in making known and asserting his right, where it has surreptitiously got into the possession of another, or he abandons it. This was the settled rule before the act of 1839, and it would seem that cases which do not come within the provisions of that act, must be governed by the old rule. No length of time, where the invention does not go into public use, can invalidate the right of the inventor. He may take his own time to perfect his discovery, and apply for a patent. And the same principle applies to the manuscripts of an author. If he permit copies to be taken for the gratification of his friends, he does not authorize those friends to print them for general use. This is the author's right, from which arises the high motive of pecuniary profit and literary reputation. When the inventor consents to the construction and use of his machine, he yields the whole value of his invention. But an author's manuscripts are very different from a machine. As manuscripts, in modern times, they are not and can not be of general use. Popular lectures may be taken down verbatim, and the person taking them down has a right to their use. He may in this way perpetuate the instruction he receives, but he may not print them. The lecturer designed to instruct his hearers, and not the public at large. Any use, therefore, of the lectures, which should operate injuriously to the lecturer, would be a fraud upon him for which the law would give him redress. He can not claim a vested right in the ideas he communicates, but the words and sentences in which they are clothed belong to him.

It is contended that the manuscripts are incomplete, and if published in their present state, could not be protected by a copy-right. That an unfinished manuscript or book, which gives only a part of the thing intended to be written or published, can be of no value, and if printed no relief could be given, as no damage would be done. That the parts of a machine, in the process of construction, if pirated, would give no right to an injunction by the inventor. If the manuscript or machine referred to consisted of a mere fragment, which embodied no principle and pointed to no design, the piracy of it would afford no ground of relief. But such is not the character of complainant's manuscripts. They may not be complete for publication. Some explanatory notes may be wanting, to assist the reader in comprehending the system. This information was communicated by lectures, and for the purposes of instruction in that mode, the notes were unnecessary. But the

cards contain the frame work of the system. The substratum is there, and so exemplified as to show the principle upon which it is constructed. That it was valuable, is shown, from the fact of the cards having been used by the defendants in teaching the system, and in publishing them as they have done.

The facts show the piracy beyond all doubt, and that it was done under circumstances which admit of little or no mitigation. The cards, as they well knew, had been, for a number of years, and were then being used by the complainant to instruct pupils. They had learned all they knew on the subject from the complainant. They probably knew that he intended to publish his plan. But this would, to some extent, at least, supersede the necessity of personal instruction. In disregard of these considerations, and of the obligations the defendants owed to the complainant, the publication was made.

The court will allow an injunction unless a satisfactory arrangement shall be made between the parties.

[NOTE. For subsequent litigation between the same parties involving the same subject-matter, see Bartlett v. Crittenden, Case No. 1,076.]