ROBERTS v. MEYERS. See Case No. 11,906.

———

## Case No. 11,906.

ROBERTS v. MYERS et al.

[Brunner, Col. Cas. 698;[1] 23 Law Rep. 396; 17 Leg. Int. 405.]

Circuit Court, D. Massachusetts. Sept., 1860.

COPYRIGHT—EFFECT OF RECORD—LITERARY PROPERTY—PRINTING—DRAMA—ASSIGNMENT—PUBLICATION.

1. The record of a copyright made in the form prescribed by the statute of 1831 [4 Stat. 436] is at least prima facie evidence that a printed title of the book was duly deposited in the clerk's office.
[Cited in Boucicault v. Fox, Case No. 1,691.]

2. Where a copyright of a book has been taken out, a copy must be deposited in the clerk's office within three months after the publication; but public representation of a drama is not a publication so as to require a copy to be so deposited.
[Cited in Boucicault v. Hart, Case No. 1,692.]
[See Boucicault v. Wood, Case No. 1,693.]

3. A literary composition may be a book entitled to copyright without being printed.

4. Where a person employed as an actor and stage manager by the proprietor of a theater agreed with him to write a drama, which should be performed in his theater as long as it should draw good audiences, held, that a copyright of the drama, when written, was properly taken out by the author, and that the proprietor had no other right than that of having the drama acted in his theater.
[Cited in Boucicault v. Fox, Case No. 1,691.]

5. An assignee of the exclusive right of acting and representing a drama for one year

———

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

throughout the United States, excepting five specified cities, may maintain an injunction suit in his own name against a mere wrong-doer.

In equity.

E. Merwin, for complainant.
T. W. Clarke, for respondents.

SPRAGUE, District Judge. This is a motion for a preliminary injunction to prevent the acting of a drama called the "Octoroon." The complainant claims as assignee of Boucicault, the author, who took out a copyright on the 12th of December, 1859.

The objections to the respondents divide themselves into two classes: As of the validity of the copyright, and the sufficiency of the assignment. The first objection is that this drama had been performed at the Winter Garden Theater, in New York, on the 6th day of December, 1859, and several other days previous to the 12th, and that Boucicault was thus precluded from taking out a copyright. Whether a previous publication on the 6th of December would have precluded the author from taking out a copyright under the statute of 1831, I have no occasion now to consider, because acting or representing is not a publication. It has been so decided in England, both upon the question of infringement and upon the question of dedication to the public. And our statute of 1856, c. 169, assumes the doctrine that representation is not publication, for that act was passed to give to the authors of dramatic compositions the exclusive right of acting and representing, which they did not enjoy under the previous statutes. Yet the prior acts secured to them the exclusive right of printing and publishing; and it was only because publication did not embrace acting or representation, that the statute of 1856 was passed, superadding that exclusive right to those previously enjoyed.

The second objection is that no printed title of this work was deposited in the clerk's office, as required by statute of 1831, § 4. The only evidence upon this point is the record from the clerk's office of the taking out of the copyright, which is in the form prescribed by that section. It is true that as a general rule the return or record made by an executive officer must set forth all the facts necessary to give validity to his doings, that the court may see whether the law has been complied with or not. But this statute prescribes the form of the return or record to be made by the officer, a part of which is that the author has deposited in the clerk's office "the title of a book," etc., "in conformity to an act of congress entitled," etc. The clerk is thus authorized to record that the title has been deposited in conformity with the act of congress, and I think that that record is prima facie evidence that the title was such as the statute requires. There is no evidence in this case that a printed title was not deposited. It stands merely upon the record. If the author is now to be required to prove by other evi-

dence that this requirement of the law was complied with, he might be under the necessity, twenty years hence, of proving by parol that he had deposited a printed title, which is not required to be preserved otherwise than by the record, and when all the recollection of the transaction may have been lost; and this, too, although he had no power to have any other record made than that which the statute had expressly prescribed. I have said that the record is prima facie evidence that a printed title was deposited. Whether it is conclusive or not, I have no occasion to decide.

The third objection is that no copy of this book was ever deposited in the clerk's office. The statute requires that such copy shall be deposited within three months after publication. That time has not arrived. There has been no publication.

The fourth objection is that this drama was never printed. By the statute, books, maps, charts, etc., may be secured by copyright. If this dramatic composition was a book within the meaning of the statute, it was the subject of copyright; and the question is whether the term "book," as applied to a literary composition, carries with it the requirement of its being printed. There is much evidence that in popular language at the present day the term "book" implies a printed work, unless we are speaking of something other than a literary composition, as blank books, etc. The statute requires a printed title page to be deposited, and there is force in the argument that this indicates that the work is to be printed. So also the statute requires that a copy shall be deposited in the clerk's office, and be transmitted to the state department; and copies were at one time to be sent to the library of congress and the Smithsonian Institution; and it may be urged that congress could not have contemplated that these copies might be in manuscript. But the language of the statute, when describing what may be the subject of copyright, is, I think, decisive of this question. By the first copyright act, which was in 1790 [1 Stat. 124], it was provided, near the beginning of the first section, that "the author * * * of any book already printed within these United States * * * shall have the sole right and liberty of printing, etc., such book." And toward the close of that section it is provided "that the author of any book already made and composed and not printed or published, or that shall hereafter/be made and composed, * * * shall have the sole right and liberty of printing, etc., such book." And the statute of 1831, now in force and under which this copyright was taken out, in section first provides that the "author of any book * * * which may be now made or composed and not printed and published, or shall hereafter be made or composed * * * shall have the sole right and liberty of printing," etc. Here it is clearly expressed that a book may exist without printing; and such book when made or com-

posed is to be entitled to copyright. The objection, therefore, cannot prevail.

The fifth objection is that prior to the writing of this drama Boucicault was in the employment of one Stewart, and wrote it as his servant, and that the work, therefore, belongs to Stewart. The only evidence of any agreement with Stewart is his answer to a bill in equity against him, in order to enjoin him from performing this drama in the Winter Garden Theater in New York, of which Stewart was the proprietor. That answer has been filed here as an affidavit. If that answer had set forth an agreement such as the respondent now contends for, I have great doubt whether it would be sufficient without corroboration by other evidence to defeat Boucicault's copyright. It was made by Stewart, as a party to a suit in which the bill of complaint was under oath, and set forth a right in the author to the exclusive enjoyment of his own work, and I should certainly hesitate before I should, upon that answer alone, when filed here merely as an affidavit, overthrow the copyright of Boucicault. But the answer does not set forth any such agreement as the respondent alleges. It states that Boucicault was in the employment of Stewart as a performer and stage manager. It does not say that he was employed as an author, but that, while a performer and manager, he verbally agreed to write a play representing life on the Mississippi, and that it should be performed at Stewart's theater so long as it should continue to draw good audiences. By this agreement Stewart acquired no right or interest in the play to be written, except the privilege of having it performed at his theater. All other rights were retained by the author. Suppose, instead of this being an agreement to write a play, and that it should be performed at that theater, the play had already been written, and Boucicault had made this agreement for its performance. It would be merely a license for its representation in a particular theater; and the fact that the play was not then in existence cannot strengthen the right of Stewart, so as to give him any greater claim than he would have if the drama had previously been written. It is quite clear that Boucicault, and not Stewart, was the proper person to take out the copyright, which extends to the whole United States. Stewart was not even an assignee for any portion of the United States, but at most a licensee for a particular theater.

The sixth objection is to the right of Roberts to maintain this suit as assignee. It is rested on two grounds. First, that the instrument relied upon is a license and not an assignment. But the instrument itself in terms "assigns" the right therein named to Roberts, and I think that the parties intended it should have that effect. The second ground is that the whole right of Boucicault is not transferred, that it is only the right of representation, and that, too, for a limited time, and not for the whole territory of the United States.

The assignment is of the exclusive right of acting and representation in all places throughout the United States, excepting the cities of Boston, New York, Philadelphia, Baltimore, and Cincinnati for the term of one year. Whatever force this objection might have at law, it cannot prevail in equity. The statute of 1834 [4 Stat. 728] sanctions assignments of copyrights by prescribing the instrument by' which they are to be made, and a mode of recording them. It does not say what interest may be assigned. But there is no sufficient reason for preventing the author from conveying a distinct portion of his right. Divisibility as well as assignability enhances the value of his property, for he may find a purchaser able and willing to pay for a part, but not for the whole of his copyright. The exclusive right of acting and representing is distinct from that of printing and publishing, created indeed by a new statute which superadds it to those pre-existing rights; and there is no good reason why it should not be as-signable, and that too, for a limited time. The respondent is a mere wrong-doer who has invaded this copyright, and intends further to invade it within the time and territory which the author, for a valuable consideration, has transferred to the complainant. It is quite clear that this copyright being infringed and in danger of further violation by a person who has no color of right, the true owner ought to have a remedy. But it is said that Boucicault ought to be the complainant, or at least join with Roberts. Why so? His interest has not been invaded or endangered, nor can the non-joinder of Boucicault in any way affect the defendant. He is not in danger of suffering from another injunction upon the suit of Boucicault. To require him, then, to be joined with Roberts would be an idle and nugatory act, beneficial to no one; and such acts courts of equity do not require. There is no good reason why the injunction prayed for should not be granted on the application of Roberts alone. Temporary injunction granted.