New Jersey State Dental Society *v.* Dentacura Company.

------

## THE NEW JERSEY STATE DENTAL SOCIETY

*v.*

## THE DENTACURA COMPANY.

[Decided October 28th, 1898.   Filed October 31st, 1898.]

1. Where at the meeting of a dental association an original essay was read, which was afterwards handed, with other essays, to a representative of a magazine of dental literature, but was not published, and a third person procured a copy from one connected with the magazine and used extracts as an advertisement, without the authority or permission of the society—*Held,* that the manuscript was the exclusive property of the society and could not be used against its consent for such purpose.

2 The burden of showing that a manuscript has been dedicated to the public is on the party so asserting.

3. A report of the committee of an incorporated dental society, in the nature of an original essay on the care and preservation of the teeth, was read at the annual meeting of the society, which accepted it for the purpose of putting it on file to later discuss it.—*Held,* that the mere fact that the report was read in the presence of auditors not excluded from the meeting without showing further that those auditors had not paid a fee as exhibitors or otherwise,

or that the general public was "invited" to be present, does not constitute a dedication of the report to the public, so as to permit its publication by an exhibitor at the meeting, who had heard it read.

On bill.

*Mr. Halsey M. Barrett,* for the complainant.

*Mr. Edward A. Day,* for the defendant.

STEVENS, V. C.

The complainant, an incorporated society, filed its bill against the defendant to restrain the publication of extracts from a report made by a committee of the complainant. The report is an original essay on the care of the teeth and the best means of preserving them. Among other things it deals with the subject of tooth-powders and pastes, and in several passages commends the paste made by the defendant. The report, signed by five dentists, members of the society, was read at a meeting thereof held at Asbury Park in July last. After having been read it was, in the language of the bill,

'then discussed and on motion accepted by the society, and  *  *  *  handed by its chairman to the secretary, to be retained by him as the property of and a part of the records of said society and said meeting."

The report, with other reports and papers of the society, was afterwards handed to a representative of a magazine of dental literature known as "Items of Interest," published monthly in New York. The report in question has not been published in this magazine. It still remains in manuscript.

Application was made by a representative of the defendant company to an officer of the complainant company for a copy. Failing to get it from him, he procured a copy from a person connected with the magazine and then proceeded to use extracts from it as an advertisement of the paste "Dentacura." It is not pretended that either the copy was procured or the advertisement made by authority or permission of the complainant. On

this branch of the case there can be no doubt. The manuscript was the exclusive property of complainant, and neither it nor extracts from it could, against complainant's consent, be used to advertise the wares of defendant.

The defendant, however, grounds his case principally on certain facts appearing in the answering affidavit of Mr. Lathrop, general manager of the Dentacura company. After deposing that he (Lathrop) was invited by the complainant to make an exhibit of his wares at the meeting, which he and other exhibitors did, he paying $12 for the privilege, he proceeds as follows :

"And deponent further says that the several sessions of the said annual meeting were open and public, and that the general public was admitted thereto, and many hundreds of people outside of the dental profession were in attendance, and that the proceedings of the society, the reading of essays and the reports of committees were conducted in the presence of the general public, and that the report of the committee mentioned in said bill and hereafter mentioned was read openly at said meeting and in the presence of the outside public, *and that many persons not connected with the society were present when the said report was made.*"

It is not distinctly averred that Mr. Lathrop was one of the persons who was in attendance when the report was read. As he swears, however, that he attended the annual meeting of 1898, I will assume that he actually heard the report. The defendant's insistment is that the reading at this meeting was a publication and that the report, or its contents, thereafter became public property, which everyone was entitled to make such use of as he saw fit.

The law respecting the ownership of literary property is entirely settled. It is thus stated by Vice-Chancellor Van Fleet, in *Aronson* v. *Baker, 16 Stew. Eq. 366 :* "The right to literary property is just as sacred and just as much entitled to the protection of the law as the right to any other kind of personal property. * * * . The established rule defining the rights of the owner of such property may be stated as follows : Every new and innocent product of mental labor which has been embodied in writing or some other material form, while it remains unpublished, is the exclusive property of its author, entitled to

the same protection which the law throws around the possession and enjoyment of other kinds of property."

That the manuscript and its contents were, in the first instance, the exclusive property of complainant does not therefore admit of doubt. The question in dispute is whether they have been so published as to have become the property of the public. As defendant does not pretend to claim by private transfer to itself, it must show title in the public, of which it is a member. The burden of proof is on the defendant. It must show *affirmatively* that what was once the complainant's has now become common property. In this I think it has failed. Mr. Lathrop says that the report was read in the presence of the public and that many persons not connected with the society were present. But who these persons were and under what circumstances they attended does not appear. They may have been, consistently with the facts stated, exhibitors who paid a fee, in which case they would stand much in the position of persons admitted to a theatrical performance or a lecture, on payment of a fee. In such case there is no dedication of the play or lecture to the public generally. *Tompkins* v. *Halleck, 133 Mass. 32 ; Palmer* v. *De Witt, 47 N. Y. 532 ; Abernethy* v. *Hutchinson, 3 L. J. Ch. 209 ; Caird* v. *Sime, 12 App. Cas. 326.*

There is no averment that a public meeting was called to hear the report read. There is no averment that the general public were by any formal act of the society or its officers invited to be present. All that is fairly deducible from Mr. Lathrop's statement is that at the regular annual meeting, some persons, not members, were not excluded from its sessions ; in other words, that its doors were not closed upon them. *Caird* v. *Sime, supra,* was much relied upon by defendant's counsel. It was the case of a professor of a public university who delivered lectures to students, one of whom took notes which he attempted to publish. Lord Halsbury applied as the test of decision, the nature of the lecture, the circumstances of its delivery and the object with which it was delivered. In the course of his judgment he says, " whether the limitation of the right (*i. e.*, the right of some person other than the lecturer or preacher) arises from implied

contract or from the existing relation between the hearers and the author, it is intelligible that where a person speaks a speech to which all the world is invited, either expressly or impliedly, to listen, or preaches a sermon in a church, the doors of which are thrown open to all mankind, the mode and manner of publication negative any limitation." The reason must be that the speech is spoken or the sermon preached directly to what he calls "all the world," and that they are intended, primarily, for the benefit of all the world. But the decision in that case was that the professor's lecture was not primarily intended for the benefit of all the world, but for the benefit of the students only, although, indirectly, all the world might ultimately reap the benefit.

It seems to me that the case in hand presents a situation similar in principle. The report was read not to or for the benefit of the public generally, but to and for the benefit of the society. It was "accepted" not by the public, but by the society. It was a professional essay intended, primarily, for professional men. The views embodied in it might or might not be approved by the members of the society at large. Now, to assert that the mere reading of this report to the society by the committee (and they had no authority to report to anyone else) in the presence of certain outsiders, was a dedication of it by the society to the public, seems to me to be unreasonable. The members of the society would not, as men imbued with the scientific spirit, be likely to stamp with their approval views or assertions which they had not as yet had the opportunity to test or consider. The circumstances of the delivery and the object in view rather rebut than sustain the inference of a dedication. Furthermore, the society did not approve the report. All they did was to accept it for the purpose of putting it on file and then to discuss it. They came to no determination as to its merits. They neither approved nor disapproved it. How, then, can we fairly infer from what took place an intention to make public with a view to the public benefit, ideas and conclusions which they were not then prepared to endorse? The mere presence of auditors is not, according to the cases, a decisive test. If it

should be held to be, then any person present at a corporate meeting, by the mere sufferance of the corporators, could thereafter publish its proceedings against their will for his own pecuniary profit, if he could only in some unauthorized way get possession of a copy of them, or could by an effort of memory recall them. Taking the facts to be as we find them stated in the affidavit of Mr. Lathrop, proof of dedication is therefore lacking. But more than this, Mr. Lathrop swears in a subsequent passage that he has been informed

"that it was the intention of the officers of the said society to disregard the recommendations of the said committee in its said report, and not at any time to publish said report or any extracts therefrom relating to Denticura, * * * and that this deponent has endeavored to obtain permission from said society to quote from said report, but that the officers of said society refuse entirely to permit this deponent and his said company to make use in any form of said report, even so far as to announce that in said report Denticura was recommended."

Here is affirmative evidence of an intention not to publish.

The complainant is entitled to a preliminary injunction. I may add that the case is now before me on *ex parte* affidavits only, and that all that is decided is that on these affidavits defendant has failed to show a title in himself or in the public.