McDEARMOTT COMMISSION CO. et al. v. BOARD OF TRADE OF CITY OF CHICAGO.

(Circuit Court of Appeals, Eighth Circuit.   July 9, 1906.)

No. 2,401.

EXCHANGES—RIGHT OF PROPERTY IN MARKET QUOTATIONS—RESTRICTED PUBLICATION.

A board of trade, which has a right of property in market quotations collected in its exchange, does not surrender or dedicate them to the public by permitting subscribers, to whom they are communicated upon condition that they shall not be made public, to post them upon blackboards in their places of business, where the posting is done for the advantage of the subscribers, and not of the public, and does not make knowledge of the quotations general, or make them accessible to the public as of right, or render them of no further value.

[Ed. Note.—For cases in point, see vol. 21, Cent. Dig. Exchanges, § 16; Quotations of prices and transactions on exchanges, see note to Sullivan v. Postal Tel. Cable Co., 61 C. C. A. 2.]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Western District of Missouri.

For opinion below, see 143 Fed. 188.

James H. Harkless (Charles S. Crysler and Clifford Histed, on the brief), for appellants.

Martin H. Foss (Henry S. Robbins, on the brief), for appellee.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

VAN DEVANTER, Circuit Judge.   This is an appeal from an interlocutory order granting an injunction restraining the appellants from acquiring and using certain continuous market quotations without the appellee's consent.

Recognizing that these quotations as collected by the appellee in its exchange are its property, that while they remain such it has the right to control their acquisition and use by others, and that wrongful invasions of this right may be restrained in equity (Board of Trade v. Christie, 198 U. S. 236, 25 Sup. Ct. 637, 49 L. Ed. 1031; Board of Trade v. Cella Commission Co. [C. C. A.] 145 Fed. 28), the appellants rest their opposition to the injunction upon the sole claim that they do not obtain the quotations until they have been given to the public with the appellee's knowledge and approval, and have ceased to be private property.   In brief, the facts are these: Under an arrangement between the appellee and certain telegraph companies, which act as distributing agents, the quotations—that is, those wherein the price of any commodity is quoted oftener than at intervals of 10 minutes—are communicated by telegraph to commercial exchanges, brokers, and others throughout the country upon the express condition that they shall be used only in the private and individual business of the receiver; that they shall not be sold, communi-

cated, or otherwise given to news distributors or others; that no one shall be allowed to directly or indirectly take them from the office of the receiver, or to make a wire connection with the instrument or wires over which they are received; and that a failure to strictly comply with any of these requirements shall terminate the receiver's right to a continuance of the service. By reason of a charge which is made for communicating the quotations in this way, their collection and distribution are a source of substantial profit or gain to the appellee. Many of those to whom they are so communicated immediately post them upon blackboards in their places of business as a convenient means of stimulating and facilitating trade. These places of business, including the commercial exchanges, are maintained by private owners for the transaction of private business, and members of the public enter, not as a matter of common right, but only by the license of the owners, and usually for purposes in connection with their business. The posting seems to be with the knowledge and approval of the appellee, but not with any assent that the quotations may be copied and taken away or reproduced and used elsewhere. The appellants are brokers and commission merchants at Kansas City, Mo. In some systematic way, not satisfactorily disclosed, but confessedly without the consent of the appellee, they obtain the quotations immediately upon their being posted by those who rightfully receive them. They then display them upon blackboards in their own offices, and use them in their own business in like manner as do their competitors, who pay for them. The time intervening after the quotations are posted by others and before they are displayed in the appellants' offices is sometimes five minutes, but generally is much less.

It is the contention of the appellants that in the circumstances described the posting of the quotations by those who rightfully receive them is a general publication, and instantly operates as a surrender or dedication to the public of the proprietary rights of the appellee. The Circuit Court held otherwise (143 Fed. 188), resting its decision largely upon the reasoning and conclusion of the Supreme Court in Board of Trade v. Christie, supra, where it is said:

"The plaintiff does not lose its rights by communicating the result to persons, even if many, in confidential relations to itself, under a contract not to make it public, and strangers to the trust will be restrained from getting at the knowledge by inducing a breach of trust, and using knowledge obtained by such breach [citing cases]. The publication insisted on in some of the arguments were publications in breach of contract, and do not affect the plaintiff's rights. Time is of the essence in matters like this, and it fairly may be said that, if the contracts with the plaintiff are kept, the information will not become public property until the plaintiff has gained its reward. A priority of a few minutes probably is enough."

While that case in principle goes far toward sustaining the ruling of the Circuit Court, we think it must be conceded to the appellants that it does not determine the precise question now presented, that is, whether the posting of the quotations in the circumstances described is such a general publication as to make them public property. The question is not, however, altogether new. It was presented and

determined adversely to the appellants' contention in Board of Trade v. Hadden-Krull Co. (C. C.) 109 Fed. 705, where it was said by Judge Seaman:

"These market quotations are peculiar in their property use and value, and, without immediate transmission to the customer, so that he receives them simultaneously with all other customers, and before their publication generally, they possess no purchase value. To make them available, it is essential to have the quotations written or printed in some form for the information of all entitled to their use; and it appears here that they were in some instances so furnished in the 'ticker,' and in others were placed on a blackboard in the office of the customer. No reason appears for finding a publication in the one method if not in the other, and I am of opinion that neither constitutes a dedication to the public while limited to the use and office of the customer."

Older and more frequent application of the principle underlying that decision is found in the cases defining the common-law rights of an author in his literary or dramatic composition. Thus a professor of a university, who delivers orally in his classroom lectures which are his own composition, does not communicate them to the public, so as to entitle one who hears them, or another, to print and circulate them without his permission. 2 Story, Eq. Jur. §§ 943, 949; Abernethy v. Hutchinson, 1 H. & T. 28; Caird v. Sime, L. R. 12 App. Cas. 326; Bartlette v. Crittenden, 2 Fed. Cas. 981, No. 1,082; New Jersey State Dental Society v. Dentacura Co. (N. J. Eq.) 41 Atl. 672; Id. (N. J. Err. & App.) 43 Atl. 1098. And an author of a drama or play, who permits another to represent it upon the stage, does not surrender or dedicate it to the public, so as to entitle one who attends its representation, or another, to print and publish it, or to represent it upon the stage, without the author's permission. 2 Story, Eq. Jur. § 950; Macklin v. Richardson, Amb. 694, 2 Eng. Rul. Cas. 66; Turner v. Robinson, 10 Irish Ch. 121, 510; Roberts v. Myers, 20 Fed. Cas. 898, No. 11,906; Boucicault v. Fox, 3 Fed. Cas. 977, No. 1,691; Crowe v. Aiken, 6 Fed. Cas. 904, No. 3,441; Tompkins v. Halleck, 133 Mass. 32, 43 Am. Rep. 480; Palmer v. Dewitt, 47 N. Y. 532, 7 Am. Rep. 480. In the last case it is said:

"So far as is disclosed by the case, the drama remained in manuscript until printed by the defendant, and there is no claim that it has been published by the author or the plaintiff, or with their assent, except by its public performance on the stage; and if it has not, by that act, become publici juris, it still remains the private property of the author or his assignee, who alone have the exclusive right to it, and may prevent its publication. When a literary work is exhibited for a particular purpose, or to a limited number of persons, it will not be construed as a general gift or authority for any purpose of profit or publication by others. An author retains his right in his manuscript until he relinquishes it by contract, or some unequivocal act indicating an intent to dedicate it to the public. An unqualified publication by printing and offering for sale is such a dedication. The rights of an author of a drama in his composition are twofold. He is entitled to the profit arising from its performance, and also from the sale of the manuscript, or the printing and publishing it. Lectures and plays are not, by their public delivery or performance, in the presence of all who choose to attend, so dedicated to the public that they can be printed and published without the author's permission. It does not give to the hearer any title to the manuscript or a copy of it, or a right to the use of a copy. The manuscript and the right of the author therein are still within the protection of the law, the same as if they had never

been communicated to.the public in any form. The permission to act a play at a'public theater does .not amount to an abandonment by the author of his title to it, or to a dedication of it to the public."

Without extending the reference to adjudged cases, we hold that the effect of the publication relied upon by the appellants is to be determined by inquiring whether it is so restricted in point of place, purpose, and persons as to be consistent with the retention by the appellee of its proprietary rights, or is so general or unqualified as to indicate an intent to surrender or dedicate them to the public at large. Tested in this way, the facts before recited admit of but one conclusion. The publication relied upon consists altogether in the posting of the quotations by those who subscribe for them. This is done in places which, by reason of their ownership and use, are private. Its controlling purpose is that of stimulating and facilitating trade with the subscriber, and not of conferring a benefit upon the public. It implies, of course, a permission that in dealing with the subscriber his patrons may use the information which the quotations contain, but not that they may be copied and taken away or reproduced and used elsewhere. It does not make knowledge of them general, or make them accessible to the public as of right, or render them of no further value. In short, it is. so restricted as to be consistent with the retention by the appellee of its proprietary rights, and does not indicate an intent·to surrender or dedicate them to the public.

We conclude, therefore, that the order granting the injunction was rightly made, and it is affirmed.