**SCHELLBERG et al. v. EMPRINGHAM et al.**

District Court, S. D. New York. July 30, 1929.

Rehearing Denied October 23, 1929.

See, also, 32 F.(2d) 831.

John L. Ketcham, of New York City, for plaintiffs.

Burnham C. Stickney, of New York City, for defendants.

KNOX, District Judge. Plaintiff is the president and manager of an institution bearing his name, at which treatments known as colonic therapy may be received by persons who desire the same. One feature of such treatments is that colonic irrigations are administered through the medium of a tube which is passed through the entire length of the colon until it reaches the cecum. By such means the bowel is cleansed of its putrefactive contents, and is prepared for the implantation within it of a quantity of acidophilus cultures which are believed to be of benefit to patients in overcoming infectious elements. Such implantation is also effected by means of the tube. It appears from the testimony that plaintiff is the first person who ever successfully passed a tube throughout the length of the human colon in a living person. With him such practice is ordinary procedure.

In 1922 Schellberg wrote two articles, giving a rather detailed account of his accomplishments with respect to such treatments. The first of these articles, entitled "The Incorrigible Colon Corrected by Medicated Irrigation," accompanied by illustrative cuts, was published in a periodical known as the International Journal of Surgery in June, 1922. The second article was given the title of "Technique of Colon Irrigation," and appeared in the January, 1923, issue of the same publication. All of the matter contained in said issues of the magazine was copyrighted by International Journal of Surgery Company, one of the plaintiffs, and the publisher of the periodical. So far as the copyrights covered the Schellberg articles, they were, as testified by the president of the publishing company,

obtained with Schellberg's acquiescence and held in trust for the author. After the appearance of the articles in the magazine, Schellberg requested a number of reprints, which were made by the publishing company and delivered to him. Being taken to his institute, they were, from time to time, distributed to his patients and to physicians and other persons who called at the place of business in this city. Several of them were kept on a stand in the reception room of the institution where they might be examined or carried away by persons visiting the establishment. The primary purpose of the distribution was to give information to persons interested in the subject discussed by the articles, and to relieve Schellberg of the necessity of orally explaining his system of treatment to those who might wish to learn about it. None of the reprints carried a notice of copyright of the printed material, but each of them carried an inscription upon its cover to the effect that it was a reprint of an article which had previously appeared in the specified number of International Journal of Surgery.

At this point it should be observed that Schellberg is also the patentee of a mechanical device for use in administering his system of colonic irrigation, and one of the reprints was used in support of the application for the patent.

During the year 1923, Schellberg developed the subject-matter of his previous articles into a book entitled "Colonic Therapy in the Treatment of Disease." While it is a much more lengthy dissertation than the previously published articles, the main theme is that of the earlier literary efforts of the author. The book was duly copyrighted in the name of Schellberg.

In May or June, 1924, James Empringham, one of the defendants, presented himself at the Schellberg Institute and met its proprietor. Empringham is an Episcopalian minister, and at the time in question was superintendent of Church Temperance Society, an organization which, although it seems not to have been conducted as a part of the Episcopal Church organization, was formerly closely identified with it. The avowed purpose of the Church Temperance Society was to reform intemperance in both food and drink. As an auxiliary to the work of this society, there was another corporation bearing the name of Health Education Society, Inc. Its object was to assist in carrying out the purposes of the parent organization. To that end it maintained a clinic in this city, at which examinations were made of persons

who wished to receive its aid, and certain treatments were administered. This exact relationship between the two organizations is somewhat indefinite. As a matter of practice, their work overlapped, and at times one seems to have done all that the other could have done had it functioned in a particular case. Empringham was secretary of Health Education Society. While each organization was, according to its literature, directed by a board of eminent divines, and was advised by a formidable array of reputed physicians and technicians, the fact is that after Empringham's connection with the societies he was the moving spirit of both. Associated with them was the Jumel Laboratory for Social Service and Research. Its function was to make analyses of urine and feces sent to it by one of the other organizations. In 1923, Dr. Allen, who was connected with the clinic of Health Education Society, was stated to be medical director of the laboratories. At a later time, Empringham's son seems to have been its director.

At various intervals, Health Education Society and/or the Church Temperance Society issued a pamphlet or magazine bearing the name of Health Education and/or Law Observance. Their contents were made up of articles or lectures on the subject of maintenance and preservation of health, of most of which the defendant Empringham was the author. In these publications he represented himself as a microbiologist, and as an authority on diet and right living, and capable of making analyses of excrescences for the purpose of ascertaining the nature of dietary ailments. The publications appear to have been designed to attract customers and patients to the clinic, where, for a relatively slight sum, a course of treatments for "deferring old age"—to use one of Empringham's expressions—might be obtained.

With this digression as to certain attendant facts, I revert to Empringham's call on Schellberg. The clergyman, it seems, had suffered from gastrointestinal trouble for a considerable period, and the Schellberg treatment had been recommended by a Dr. Cowett. After Empringham and Schellberg had discussed their respective activities, the former said he would like to secure treatments, but, being a minister and without ample funds, it was suggested that he receive his treatments gratis. To this Schellberg assented, and the administration of colonic irrigations and acidophilus implantations extended over several weeks. Their normal cost would have been $150 to $200. During the course of the treatments, Schellberg gave

Empringham copies of the reprints of the articles that had been published in "International Journal of Surgery," and upon some of the calls which Empringham made to the Schellberg establishment he helped himself to other copies. Schellberg says that he presented defendant with a copy of his book. This assertion, as well as most of the rest of the Schellberg testimony, is denied by Empringham. This much, however, is certain, viz. that Empringham, in return for the consideration received at the hands of Schellberg, was to recommend his establishment to persons who called at the place of business of Health Education Society. Schellberg says that Empringham requested reprints of the articles published in the Journal of Surgery for distribution to potential patients of Schellberg who might visit the minister's clinic. He also says that he told Empringham he could not give him a supply of the reprints, inasmuch as he had only a few, but that he might obtain the copies from the International Journal of Surgery Company. Empringham, it is said, told Schellberg that he would have the reprints made, and Schellberg replied that he would communicate with the publishing concern and would send it the illustrative cuts, a part of which were in his possession. Thereupon, Empringham said that he had seen the International Journal of Surgery Company and that it had left the matter to Schellberg, and further that he would deliver the cuts to the publisher. Schellberg then had four cuts handed to Empringham.

During these several interviews, some talk passed between the men looking to the purchase of one of Schellberg's devices for the administration of colonic irrigation. He, however, was unwilling to sell the same for less than $250, and the transaction was not consummated. From the day that Empringham received the cuts until January, 1928, when he was in court, Schellberg says he never saw him. Meanwhile a number of things had taken place.

The first of these is that Empringham, in September, 1924, published a book which bore this inscription: "Intestinal Gardening for the Prolongation of Youth, by Dr. James Empringham, with foreword by Dr. Harvey W. Wiley, Health Education Society, Inc."

Much of the matter contained in this volume was taken from articles that had previously appeared in the Church Temperance or Health Education Society pamphlets. The book also included the cuts that Empringham had obtained from Schellberg, together with a considerable amount of material that was copied bodily from the Journal of Surgery reprints. Credit, nevertheless, was given to Schellberg, as being the author of the portions of the literary efforts that were so copied, and they were marked as being "Extracts from the International Journal of Surgery, January, 1923."

Had the matter ended here, this suit probably would not have been brought, even though Schellberg says he was ignorant of the existence of Empringham's book until a short time before he filed his complaint.

There came a day when Schellberg was no longer given credit for what he had written. Between September, 1924, and March 1926, John T. Bender, vice president of the law publishing house of Matthew Bender & Co., came across one of Empringham's books, and was impressed by the simplicity and apparent soundness of the doctrine it expressed. He felt that the book, which was somewhat crude in form, might be improved if it were rewritten and put in a more attractive binding, and that it would be welcomed by a large number of readers who were seeking relief from intestinal troubles. He went to call on Empringham, with the result that the book was rewritten. It then contained most, if not all, of the Schellberg material that had appeared in the previous edition, but none of it was credited to Schellberg. About this time Schellberg had his attention called to the fact that Empringham had improvised one of the former's devices for administering colonic irrigations, and was assuming, through his assistants, to give such treatments at the clinic of Health Education Society, which, it may be remarked, went successively under a variety of names. Schellberg made haste to consult his attorney, and it was but a short time until suit was started against Empringham and Health Education Society, Inc. Numerous proceedings followed in respect to amendments and counter amendments of the pleadings. Finally, in January, 1928, the case came on for trial. At its conclusion, further motions of various kinds were made, until the record was in hopeless confusion. In order that the entire matter might be simplified, and out of consideration of the fact that a separate action by Schellberg against Matthew Bender, Incorporated, was pending on the calendar, I thought it advisable that both sides in the original action should be permitted to amend their respective pleadings, and that it should be consolidated with the Bender litigation, and the entire controversy retried. That course was pursued, and the present record came into existence during October, 1928.

The case was not submitted for decision until late in the following winter, due to the pendency of a patent infringement suit brought by Schellberg against Empringham and Church Temperance Society, Incorporated, which resulted in a decree against such defendants upon February 6, 1929.

The general summary of facts outlined above might be extended indefinitely, but enough has been stated, I think, to enable one to enter upon some discussion of the law. As this proceeds, other facts developed at the trial will be made to appear.

The defense is predicated principally upon the contention, first, that Empringham's copying was done from the Journal of Surgery reprints, instead of from Schellberg's book, and that no copyright protection applies to such reprints, for the reason that they carried no notice thereof, and that any protection given them by copyrights on the magazines in which they originally appeared, was abandoned when they were publicly distributed; second, that Schellberg gave Empringham the right to copy the reprints; and, third, that Empringham had no notice of copyright before beginning his infringement.

That the copyright on the original publications of the Schellberg articles was held in trust for the author is found as a fact. Press Publishing Company. v. Falk (C. C.) 59 F. 324; Harms v. Stern (C. C. A.) 229 F. 42. If there is any question of the right of Schellberg to maintain suit upon a copyright to which another party holds legal title, it is resolved in favor of the present action for the reason that International Journal of Surgery Company is a party plaintiff herein, although it "asks nothing, expects nothing and wants nothing for itself." It is present merely for the purpose of submitting itself to the court. Coming now to the question as to whether the distribution of the unmarked reprints constituted an abandonment of the copyright that was originally obtained, it is to be remembered that they were freely distributed to persons who visited the Schellberg Institute. While the testimony does not reveal the number of such reprints that have been printed and distributed, it is fair to assume that the number was fairly large. Schellberg has done an extensive business over the years that have intervened since the first publication of the articles, his patients running into the thousands. It is doubtless true that the reprints, which are of considerable length, were carried away from the Institute for perusal and study by persons who obtained them. Notwithstanding, I feel that Schellberg should not be held to have dedicated his articles to the public. The distribution which he made, and that which Empringham was authorized to make, was for a specific and limited purpose. In this respect the case differs but, slightly from that of Bartlette v. Crittenden, 2 Fed. Cas. page 981, No. 1082, in which it was held that a lecturer who uses his own manuscripts for the purpose of instructing other persons does not abandon his literary work to the public even though his pupils are permitted to possess copies of the same. The theory was that, the lectures having been intended for the instruction of a class of students, and having been used as such, they could be applied to no other purpose. Here the Schellberg articles were intended for the instruction of the persons, who, as prospective patients of the Institute, might be interested in the subjects which the articles discussed. In addition to all this, Empringham was told by Schellberg that communication must be had with the Journal of Surgery Company before the reprints which Empringham said he wished to distribute should be published. The latter, it will be recalled, said that he had seen the company and implied that it was satisfied with the arrangement. Such statement was not in accord with the fact, and, as it was upon this representation that Empringham obtained the illustrative cuts from Schellberg, he should derive no benefit from his deceit; and, in any event, section 20 of the Copyright Statute (17 USCA § 20) provides:

"Where the copyright proprietor has sought to comply with the provisions of this title with respect to notice, the omission by accident or mistake of the prescribed notice from a particular copy or copies shall not invalidate the copyright or prevent recovery for infringement against any person who, after actual notice of the copyright, begins an undertaking to infringe it. * * * "

If Schellberg told Empringham, as he says he did, that the articles were copyrighted, the infringement was with actual notice, and Empringham is not protected from the lack of copyright notices appearing on the articles. And there is no good reason to deny the truth of Schellberg's statement. Defendants, however, urge further that the author's copyright was abandoned on one of the articles when a reprint of "Technic of Colon Irrigation" was attached to Schellberg's application for his letters patent. As a matter of practical importance, the matter is too small to talk about, for the reason that, with the exception of a relatively few lines of that article and the cuts contained in it, Empringham's infringing matter was taken

from the other article entitled, "The Incorrigible Colon Corrected by Medicated Irrigation."

Counsel for defendants argues strenuously that the case should be ruled by the decision in Holmes v. Hurst, 174 U. S. 82, 19 S. Ct. 606, 43 L. Ed. 904, and Mifflin v. R. H. White Co., 190 U. S. 260, 23 S. Ct. 769, 47 L. Ed. 1040. In my opinion, neither of them is applicable to the case at bar. In Holmes v. Hurst the articles had appeared serially in a monthly magazine, and no attempt was made to copyright them until long after the publication. In Mifflin v. R. H. White Co., there was no evidence that the publishers of the articles were the assignees or agents of the author of the articles in taking a copyright upon them.

Considerable time might be spent in an effort to point out those portions of Schellberg's book as are claimed to be infringed by paraphrastic copying therefrom which is found in Empringham's publication, but I think it unnecessary to do so. The slavishly copied matter taken from Schellberg, whether it is regarded as having been lifted from his articles or his book, is sufficient to make out a case of infringement. For this reason, I shall save the time that otherwise would be necessary for comparison and analyses of the different texts.

To the extent that defendants' infringement is based upon a contention that it was licensed by Schellberg, the burden of proof in establishing the same is upon the defendants. And, painful as it is to make the statement, it must be said that Empringham, whenever the truth conflicted with his own interests, was not a wholly credible witness. Out of deference to his ecclesiastical standing, this statement should not be made unless it be supported by some facts which tend to corroborate his tendency to conduct himself improperly. In the first place, the notice of copyright appearing upon the first edition of the infringing book is false, inasmuch as the book was never copyrighted. Secondly, Empringham, in dealing with subjects which imply medical knowledge, so designated himself as to induce the belief that he holds the degree of doctor of medicine. Not only that, but at times he stated to patients calling at his clinic that he was a duly qualified physician, although not licensed to practice medicine in this state. Thirdly, he is a deliberate infringer of the Schellberg patent on the colonic administrative device. Fourthly, he represented himself as a former lecturer on "Bacteriology at the Physicians' and Surgeons' College of Microbiology of London." Oral testimony of a physician familiar with medical institutions in London, as well as current medical directories as of dates when Empringham was supposed to be lecturing in that city, indicate the nonexistence of any institution of the name given by defendant. At the clinic which he conducted here, patients were invited to submit specimens of their feces for analysis and report. Each patient received what purported to be an analysis of specimen submitted, and was advised on the basis of what it was supposed to show. Nevertheless, the evidence is persuasively clear that specimens of feces were seldom, if ever, examined, but were thrown away. Fifthly, he represented that physicians and technicians of apparent high standing and ability were connected with his clinic, either actively or in an advisory capacity, when as a matter of fact he had no real basis for such representations. Sixthly, the evasive and contradictory testimony given at this and the previous trial compel the belief that he was far from frank.

True enough, Empringham's statement to the effect that he showed his book "Intestinal Gardening" to Schellberg in the fall of 1924, and that he approved the same, receives some corroboration from his daughter-in-law, who says she saw the book delivered, but did not hear the conversation that then took place between the two men. Her testimony is not enough to make out the license on which defendants rely. That reliance should not be placed upon the claim of license seems clear, when consideration is given to the conduct of Empringham at the time he learned efforts would be made to hold him liable as an infringer. He then called at the office of Dr. Lewis of the Journal of Surgery Company, and asked that his infringement be condoned on the ground that he was a minister and had committed his wrong unwittingly. No claim was then made that his acts had been authorized by Schellberg. In the course of giving his version of the interview with Lewis, Empringham said he had been an editor for many years, and evidenced considerable knowledge of the rights of copyright proprietors.

With this extended account of the character of Empringham's infringement, which might be further elaborated, I come to the part in the wrong that was played by Matthew Bender & Co., Incorporated. Although it made no investigation of Empringham's scientific standing, that concern entered upon the project of printing the second edition of the infringing book in the best of faith, and it published 4,000 copies. Of that number, 1,750 copies were sold without notice of plaintiff's rights. When such notice came to

the Bender Company, its action was not of a character to merit commendation. Instead of doing all that was possible to save Schellberg from injury, it assisted Empringham in a continuance of the wrong already done. This was partly accomplished by selling the copies of the Bender edition of "Intestinal Gardening" to Empringham at less than cost. When they came into his hands, he paraphrased from the text of the verbatim copying that had previously been done. The Schellberg system of colonic irrigation was now called "The Latest English Method." The book containing the substituted matter was accompanied by a printed notice bearing a Bender Company heading, which read:

"Notice:

"New pages 127 to 134 inclusive, have been inserted in this book, in order to correct certain errors.

"This explains the appearance of the book. The entire edition is almost out of print and no copies in any different condition can be supplied."

The paper jackets which covered the binding of the books, and which were printed by Matthew Bender & Co., Incorporated, contained this boldly printed inscription:

"This book teaches the lately discovered natural method of overcoming constipation by cultivating the native, aciduric bacteria in the lower bowel."

■ With these aids, Empringham and his societies continued the infringement, and the Bender Company must be held to have intended to lend its aid to what was done subsequently to the sale of the books to Empringham. It must therefore be held as a joint tort-feasor.

The pamphlet "Health Education" for October, 1924, at pages 10 and 14, contained a small infringement on the Schellberg articles. The issue of August, 1925, also infringed. They were of small consequence so far as damage to Schellberg is concerned. An award of damages in plaintiff's favor against Health Education Society, Inc., for $500 will be sufficient.

Plaintiff's counsel is of opinion that his clients should recover total damages against defendants, other than Health Education Society, Inc., to the extent of $50,000, one-half of that sum to be for infringement, and the remainder for damages arising through unfair competition, and the violation of defendants' of the New York Civil Rights Law. That statute (section 51) provides that when a picture of a living person is used without authority by another for advertising purposes, a suit in equity may be maintained for an injunction and damages. One of the pictures published by Empringham contained the likeness of Schellberg. No proof of damages as a result of such publication is shown, and I shall award none. Neither shall he recover damages for unfair competition.

As respects the infringement, an accurate computation of damages sustained therefrom would be most difficult if an attempt was made to calculate the same.

Schellberg printed 5,000 of his books at a cost of $6,500, and expended something over $3,000 in advertising the same. Subsequent to the publication date, January, 1924, and prior to the appearance of Empringham's book, Schellberg sold 623 copies of his volume, at $5 per copy. Between September 30, 1924, and the trial, 273 books were sold. ■ Whatever may be the merits and scientific worth of the Schellberg volume, it must be said that it carries with it none of the characteristics of a "best seller," and I am unwilling to say, upon the proof before me, that Empringham and Bender infringements are wholly responsible for the failure of Schellberg's book to be more extensively sold. From my view of the case, I think that the court, under the provision of section 25 of the Copyright Act, subd. b, 17 USCA § 25(b) should allow a recovery of $1 for each of the infringing books, in lieu of actual damages and profits, and that course will be followed.

Of the first edition of the Empringham book, 4,000 copies were printed, and the second edition comprised the same number. At the outset, the first edition did not go so well, but the second seems to have been exhausted. When it had been disposed of, the copies of the first edition remaining unsold were doctored up with pasters, inserts, etc., and were sold. For the most part, they brought $1 or $2 per copy. In a few instances, two copies of the first edition were sold for $1, and some were given away. Defendants, with the exception of Matthew Bender & Co., Incorporated, and Health Education Society, Inc., should be liable to the extent of $8,000. Of that amount, Matthew Bender & Co., Incorporated, has incurred a liability, on account of its direct and contributory infringement, to the extent of $4,000. Plaintiffs seek to hold defendants for the infringement of three copyrights—that is, for separate infringement of those covering the Journal of Surgery articles, and for the infringement of the Schellberg book copyright—and refer me to the case of L. A. Westerman v. Dispatch Printing Co., 249 U. S. 100, 39 S. Ct. 194, 63 L. Ed. 499, as authority for this contention. In that suit, seven *different* copyrighted illustrations were published, and it was de-

cided that seven different infringements had taken place. Here the same matter, in substance, is the subject-matter of three copyrights. If the extent of the infringement from the separate articles be attempted to be set forth, difficulties will be encountered in the way of making proper apportionment of the infringements to the respective copyrights, and it seems just, under the circumstances of the case, not to accumulate liabilities as to the three copyrights.

█ The solicitor for plaintiff, in his effort to vindicate the rights of Schellberg, has been required to consume much time, and, in what he has done, great persistence and considerable ability has been displayed. In reality, he has conducted two trials. Considering the difficulties that have been encountered, I think an award of a counsel fee of $2,500 is warranted. The greater portion of this sum should be paid by Empringham and Church Temperance Society, and I shall assess these defendants with liability for counsel fee to the extent of $1,500. The Health Education Society's share of the award is fixed at $250 and that of Matthew Bender & Co. at $750.

An injunction against further infringement will of course be passed.

### On Motion for Rehearing.

Defendants' motion for a rehearing in the above-entitled case will be denied. It is quite possible that my views of the law upon the issues presented by the suits are erroneous; but, if so, the correction of my mistakes must be made by the appellate court. In other words, I do not believe that a reargument will change the opinion heretofore filed. The case was given earnest effort and study in an attempt to reach a just result. For the purpose of ascertaining if my effort in that direction had failed, I have read the brief filed in support of the present petition. It does not change my previously expressed opinion.

Upon the approval by the clerk of the costs assessed in plaintiffs' proposed decree, the same will be signed.