Dick MANNING and Larry Stock,
Plaintiffs,

v.

MILLER MUSIC CORPORATION, Twentieth Century Music Corporation, Twentieth Century-Fox Film Corporation, Paul Francis Webster, Sammy Fain and Remick Music Corporation, Defendants.

United States District Court
S. D. New York.

June 10, 1959.

George Garfunkel, New York City, for plaintiffs.

Abeles & Bernstein, New York City, Arnold J. Bernstein, New York City, of counsel, for defendants Miller Music Corp., Twentieth Century Music Corp., and Twentieth Century-Fox Film Corp.

FREDERICK van PELT BRYAN, District Judge.

All of the corporate defendants except Remick Music Corporation move to dismiss the complaint on the grounds that it fails to state a claim upon which relief can be granted, and that plaintiffs are not the real parties in interest. Rules 12(b)(6) and 17(a), F.R.Civ.P., 28 U. S.C.

Plaintiffs Manning and Stock allege that they are the composers of the song "Morningside of the Mountain", that Music Publishers Holding Corporation (not a party to this action) secured a copyright on their song pursuant to a written agreement with them, and that Music Publishers assigned the copyright to defendant Remick Music Corporation, the publisher.[1]

It is alleged that "Morningside of the Mountain" was widely exploited and had great public success, and that the copyright was infringed by the publication, exploitation and sale of a song called "A Certain Smile" composed by defendants Webster and Fain. Defendants Miller Music Corporation, Twentieth Century Music Corporation, Twen-

---

[1.] It appears that Music Publishers Holding Corporation has no independent interest in the copyright but acted for Remick in making the agreement with the plaintiffs. An affidavit submitted by plaintiffs describes Music Publishers as a "subsidiary or associate" of Remick. No question is therefore presented as to what the rights of the parties would be if the copyright had passed to an independent party without notice of the terms of the agreement between plaintiffs and Music Publishers, and I do not regard that question as before me. For purposes of this motion I will consider that defendant Remick and Music Publishers are substantially one entity and that Remick was fully on notice of the terms of the agreement.

tieth-Century Fox Film Corporation and Webster and Fain are alleged to be connected in various ways with the infringement charged, and it is claimed that all are liable for infringement of the "plaintiffs' copyright".

Remick Music Corporation is joined as a defendant, plaintiffs allege, because by the terms of the agreement between them and "their publisher the plaintiffs have reserved and retained the right to institute this action in the event that their publisher does not do so".

This agreement is not part of the complaint but it is not disputed that it is the "1947 Revised Popular Songwriters Contract" used by the American Guild of Authors and Composers, a copy of which is before the court.

The agreement provides that the publisher may bring action against infringers at its expense but that if the publisher fails to institute such action within 30 days after written demand by plaintiffs, plaintiffs are entitled to institute such suit at their own expense. All sums recovered as a result of any such action, after the deduction of expenses, are to be divided equally between the publisher and the authors. No settlement may be made by either without first notifying the other, and in the event that either objects the party objecting thereto may assume the prosecution of the action and expenses.

The complaint alleges that a demand was made on Remick to institute this action but that Remick refused so to do. No claim for affirmative relief is made against Remick.

The instant motion proceeds on the theory that plaintiffs are not the proprietors of the copyright alleged to have been infringed, are not aggrieved parties within the meaning of the copyright law, 17 U.S.C. § 112, and therefore cannot maintain the action. See Goldwyn Pictures Corporation v. Howells Sales Co., 2 Cir., 282 F. 9.

To determine what rights plaintiffs have in the premises the Copyright Law must be taken as the point of departure. For unless the right to maintain an action for infringement of this statutory copyright is conferred on the plaintiffs by that statute they may not maintain the action. See, e.g., Danks v. Gordon, 2 Cir., 272 F. 821; Carl Laemmle Music Co. v. Stern, 2 Cir., 219 F. 534. Cf. Form 17, F.R.Civ.P., 28 U.S.C.; Ball, Law of Copyright and Literary Property, (1944), 661, 680. Cf. Miller Music Corp. v. Charles N. Daniels, Inc., D.C.S.D.N.Y., 158 F.Supp. 188, affirmed 2 Cir., 265 F.2d 925.[2]

17 U.S.C. § 101 provides that one who infringes the copyright in any protected work shall be liable to "pay to the copyright proprietor" damages. Section 112 provides for injunctive relief to "any party aggrieved" but the "party aggrieved" must have the right to maintain a suit under Section 101 as a "copyright proprietor" in order to be entitled to such injunctive relief. Goldwyn Pictures Corporation v. Howells Sales Co., supra.

Thus the statute gives only copyright proprietors the right to sue for infringement.

A "proprietor", in so far as the term is important here, is either the author of the work or his assignee. Dam v. Kirke La Shelle Co., C.C.S.D.N.Y., 166 F. 589, affirmed 2 Cir., 175 F. 902, 41 L.R.A.,N.S., 1002; In re Waterson, Berlin & Snyder Co., 2 Cir., 48 F.2d 704; Atlantic Monthly Co. v. Post Pub. Co., D.C.D.Mass., 27 F.2d 556. See Buck v. Gibbs, D.C.N.D.Fla., 34 F.Supp. 510, modified on other grounds Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416.

The party bringing suit must not only be a *proprietor* in this sense but also a copyright "proprietor", that is to say, he must have owned the copyright at the time of the infringement. For the trans-

2. There is no allegation of diversity of citizenship. The sole ground of jurisdiction in that "this action arises under the United States statutes dealing with copyrights".

fer of the copyright owner's "right, title and interest" will not ordinarily vest in his assignee a cause of action for an infringement which occurred prior to the assignment. Kriger v. MacFadden Publications, Inc., D.C.S.D.N.Y., 43 F.Supp. 170, 172. Nor can the owner-assignor maintain such an action if the infringement took place subsequent to the assignment, or unless it took place before the transfer. M. J. Golden & Co., Inc. v. Pittsburgh Brewing Co., D.C.W.D. Penn., 137 F.Supp. 455.

■■■ However, the courts recognize that legal title to a copyright may be in one person and equitable title in another. Thus, one may be a "proprietor" of a copyright if he holds legal title, though equitable title may be in another either expressly (Schellberg v. Empringham, D.C.S.D.N.Y., 36 F.2d 991) or as trustee ex malificio (Ted Browne Music Co. v. Fowler, 2 Cir., 290 F. 751). In such case the courts treat one who has established that he is the equitable owner as a copyright proprietor within the meaning of the statute and permit him to maintain suit for infringement. Ted Browne Music Co. v. Fowler, supra; Schellberg v. Empringham, supra; Bisel v. Ladner, 3 Cir., 1 F.2d 436.

Plaintiffs here urge that they hold equitable title to the copyright and thus fall within the rule permitting equitable owners to sue. They say that they enjoy very substantial rights under their agreement with the publisher and that these rights are tantamount to equitable title.

The rights reserved to the plaintiffs by the agreement include (1) the right to receive royalties; (2) a restriction on assignment of certain rights by the publisher, such as motion picture rights, without plaintiffs' consent; (3) limitation on publisher's right to grant block or bulk licenses without the consent of the Songwriters Protective Association of which plaintiffs are members; (4) restriction on the publisher's right to grant licenses for television or for new purposes without plaintiffs' written consent; (5) the right for a limited period to secure reassignment of the song and copyright if it is not made productive by the publisher; (6) specific reservation of renewal rights; (7) the right to share in any damages recovered in any infringement action.[3]

However, nowhere does this lengthy agreement upon which plaintiffs base their rights declare an express trust. It provides in the first paragraph "The Writer(s) hereby sells, assigns, transfers and delivers to the publisher * * a * * * musical composition * * *, including the title, words, and music thereof, and the right to secure copyright therein throughout the entire world * * *". This language has been held to vest the publisher with full title to the composition and the copyright. Kriger v. MacFadden Publications, supra. See, also, Local Trademarks, Inc. v. Powers, D.C.E.D.Penn., 56 F.Supp. 751. Thus, the agreement does not support the allegation in the complaint that "plaintiffs' copyright" has been infringed.

But this is not decisive of the question presented. The Kriger case, where the same language was involved, and which presented a problem similar to that here, contains dictum to the effect that "the cases do make one distinction, however, * * *. They seem to hold that if in this case [the holder of the copyright] was included as a party, then the complaint would be good". 43 F.Supp. at page 172. This is based upon the peculiar relationship between the author and his publisher, which is stated in Schisgall v. Fairchild Publications, Inc., 207 Misc. 224, 230–231, 137 N.Y.S.2d 312, 318, to be as follows:

"It is not necessary to use the magic words of 'fiduciary relationship', or to hold that a 'relationship

---

3. It will be noted, as already mentioned, that the publisher may sue the infringer but that the authors may bring suit after demand if the publisher fails to do so. In either case the proceeds are equally shared.

of trust and confidence' was created by the contract, or to find that [the publisher] became a 'trustee' of the copyright for the benefit of the plaintiffs. * * *.

"The law implies a promise on the [publisher's] part to endeavor to make the [work] productive, since that is the very purpose of the assignment of literary rights and the correlative obligation to pay royalties. * * *. Had the [publisher] intentionally permitted the copyright to be infringed by others, it would thereby have subjected itself to liability as a fiduciary to the plaintiffs."

▮▮▮ It is this fiduciary relationship, imposing equitable obligations upon the publisher beyond those ordinarily imposed by law upon those dealing fully at arms' length, which gives the plaintiffs standing to sue here.[4] See, e. g., Nelson v. Mills Music, Inc., 278 App.Div. 311, 104 N.Y.S.2d 605, affirmed 304 N.Y. 966, 110 N.E.2d 892; McClintic v. Sheldon, 269 App.Div. 356, 55 N.Y.S.2d 879, affirmed 295 N.Y. 682, 65 N.E.2d 328. It is well settled that a fiduciary who refuses to bring suit against a third party for the benefit of his cestui abuses his trust. In such event the cestui may maintain a bill in equity against the trustee in which the third party may be joined as a defendant. The trustee thus is not permitted by inaction or dereliction to bar his cestui from enforcing his rights in that capacity. See Restatement of Trusts, § 282. The ordinary stockholders' derivative action is a variant of this principle.

The principle is not foreign to copyright law. It has long been held that an exclusive licensee can maintain an action against an infringer if he joins the copyright owner as a party. See Ilyin v. Avon Publications, Inc., D.C.S.D.N.Y.,

144 F.Supp. 368; Field v. True Comics, D.C.S.D.N.Y., 89 F.Supp. 611, affirmed 2 Cir., Fields v. Commissioner of Internal Revenue, 189 F.2d 950. This is analogous to the result reached in patent cases in similar situations. Goldwyn Pictures Corporation v. Howell Sales Co., supra.

It was early held in the leading case of Gayler v. Wilder, 10 How. 477, 51 U.S. 477, at pages 494–495, 13 L.Ed. 504, with respect to patents that:

"* * * it was obviously not the intention of the legislature to permit several monopolies to be made out of one, and divided among different persons * * *. Such a division would inevitably lead to fraudulent impositions * * * and would subject a party who, under a mistake as to his rights, used the invention * * * to be harassed by a multiplicity of suits instead of one, and to successive recoveries of damages by different persons holding different portions of the patent right * * *."

See, also, De Forest v. Collins Wireless Tel. Co., C.C., 174 F. 821.

The rule laid down by Gayler that only the owner of the patent could sue, while it prevented a defendant from being harassed by a multiplicity of suits, also tended to prevent suit by persons who had a legitimate interest in the patent seeking redress against a wrongdoer. In Independent Wireless Tel. Co. v. Radio Corporation of America, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357, the harshness of this rule was ameliorated by holding that a wronged licensee of a patent could maintain an action for infringement by joining the owner of the patent. The court relied on the analogy to cases in which the cestui que trust was permitted to make an unwilling trustee a party defendant in a suit to protect his inter-

4. While the author-publisher agreement provides that all of the publisher's receipts which may become due to the composers shall be held in trust for them by the publisher, this plainly does not place the copyright itself in trust as the plaintiffs contend. No doubt its major purpose is to avoid the seizure of the proceeds by the publisher's creditors. Nevertheless, the clause is indicative of the close and rather unusual relationship between the parties.

ests. 269 U.S. at pages 468–469, 46 S.Ct. at page 169. Thus, the danger to the alleged infringer of being subjected to multiple recoveries for the same alleged wrong which was pointed out in the Gayler case was reconciled with the desirability of permitting one with a legitimate interest in the patent to have redress against a wrongdoer.

In Independent Wireless the court said as to the relationship between the owner of the patent and the licensee that "the owner * * * holds the title to the patent in trust * * * to the extent that he must allow the use of his name as plaintiff * * *."

The same theory applies in copyright cases. See Widenski v. Shapiro, Bernstein & Co., 1 Cir., 147 F.2d 909. Indeed, such copyright cases as Schellberg v. Empringham, supra, and Bisel v. Ladner, supra, do not indicate that the owner of the legal title to a copyright is any more a trustee of the title for his assignee than was the owner of the patent for his licensee in Independent Wireless.[5]

I see no good reason why the theory of these cases should not be carried over into the case at bar. The same reconciliation between the dangers of multiplicity of suits and the legitimate interests of plaintiffs who claim that their rights have been invaded, which was accomplished in the Independent Wireless case, will result.

An exclusive licensee is permitted to sue for infringement naming the proprietor because the proprietor's sufferance of infringement would be "as harmful to his promisee [the licensee] as would be the grant of a license in direct violation of the contract." Western Electric Co. v. Pacent Reproducer Corp., 2 Cir., 42 F.2d 116, 118, certiorari denied 282 U.S. 873, 51 S.Ct. 78, 75 L.Ed. 771.

See Philadelphia Brief Case Co. v. Specialty Leather Products Co., D.C., 145 F.Supp. 425, affirmed 3 Cir., 242 F.2d 511. The rights retained by the plaintiffs here are no less demanding of recognition than those enjoyed by licensees. Plaintiffs' reserved rights are substantial and are coupled with an interest which requires protection as much as does the interest of a licensee.

One of the major rights enjoyed by an exclusive licensee is the right of direct exploitation of the portion of the copyrighted material which is the subject of his license to the exclusion of others. It is this right which the courts seek to protect by permitting the joinder of the owner in a suit for infringement.

The plaintiffs here are entitled to participate in all proceeds from *all* forms of exploitation. If they are denied the right to compel the proprietor (Remick) to assert causes of action for their benefit, their reserved rights of participation will be gravely impaired and their reserved rights of statutory renewal compromised. See Western Electric Co. v. Pacent Reproducer Corp., supra, 42 F.2d at page 118.

Complete justice can be done to all parties in this suit and nothing compels the conclusion that plaintiffs should be remitted to a separate action in contract against their publisher with consequent difficulties, dangers and complications too obvious to require comment. Since the plaintiffs have joined the owner of the copyright as a party defendant and have alleged refusal on his part to sue after due demand, I hold that plaintiffs have standing under the Copyright Law to maintain this suit.

The motion to dismiss the complaint is therefore in all respects denied.

So ordered.

---

5. Defendants rely heavily on cases like Green v. Le Clair, 7 Cir., 24 F.2d 74. These cases lend them no comfort since it does not appear in any of them that the owner of the copyright or patent was joined by plaintiff as a party to the suit. See Hoffman v. Santly-Joy, Inc., D.C.S.D.N.Y., 51 F.Supp. 778, 779. Compare Field v. True Comics, supra, with Kriger v. MacFadden Publications, supra, and Local Trademarks Inc. v. Powers, supra.