**INTERNATIONAL TAPE MANUFAC-TURERS ASSOCIATION, Plaintiff-Appellee,**

v.

**Richard GERSTEIN et al., Defendants-Appellants.**

**No. 72-2883.**

United States Court of Appeals, Fifth Circuit.

May 13, 1974.

William J. Dunaj, Sp. Asst. Atty. Gen., Miami, Fla., for the State of Florida, Howard S. Smith, Los Angeles, Cal., for defendants-appellants.

James L. Fisk, Washington, D. C., for plaintiff-appellee.

Before JONES, THORNBERRY and COLEMAN, Circuit Judges.

THORNBERRY, Circuit Judge:

Plaintiff-appellee International Tape Manufacturers Association ("ITMA") contends that the Florida tape piracy statute [1] is in conflict with the federal statute extending copyright protection to sound recordings [2] and thus unconstitutional under the Supremacy Clause.[3] Because the court below prematurely rushed to judgment when the record did not reveal a justiciable controversy we must remand this case for further proceedings.

Appellee is an association whose members "manufactur[e] tape products by transferring sound recordings on phonograph records or discs with the attempt [sic] to sell or cause to be sold these products in interstate commerce." [4] Appellants are Florida's attorney general

---

1. (1) As used in this section, unless the context otherwise requires:

(a) "Owner" means the person who owns the master phonograph record, master disc, master tape, master film, or other device used for reproducing sounds on phonograph records, discs, tapes, films, or other articles upon which sound is recorded, and from which the transferred recorded sounds are directly or indirectly derived.

(b) "Person" means any individual, partnership, corporation, or association.

(2) It is unlawful:

(a) Knowingly and willfully and without the consent of the owner, to transfer or cause to be transferred any sounds recorded on a phonograph record, disc, wire, tape, film, or other article on which sounds are recorded, within the intent to sell or cause to be sold for profit such article on which sounds are so transferred.

(b) To sell any such article with the knowledge that the sounds thereon have been so transferred without the consent of the owner.

(3) Any person violating any provision of subsection (2) shall be guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083.

(4) This section shall neither enlarge nor diminish the right of parties in private litigation. This section shall not be construed in any way to affect §§ 543.02, 543.03, and 543.-04.

Fla.Stat.Ann. § 543.041 (1972), F.S.A.

2. Any person entitled thereto, upon complying with the provisions of this title, shall have the exclusive right:

(f) To reproduce and distribute to the public by sale or other transfer of owner-

ship, or by rental, lease, or lending, reproductions of the copyrighted work if it be a sound recording: *Provided*, That the exclusive right of the owner of a copyright in a sound recording to reproduce it is limited to the right to duplicate the sound recording in a tangible form that directly or indirectly recaptures the actual sounds fixed in the recording: *Provided further*, That this right does not extend to the making or duplication of another sound recording that is an independent fixation of other sounds, even though such sounds imitate or simulate those in the copyrighted sound recording; or to reproductions made by transmitting organizations exclusively for their own use.

In case of failure of such manufacturer to pay to the copyright proprietor within thirty days after demand in writing the full sum of royalties due at said rate at the date of such demand, the court may award taxable costs to the plaintiff and a reasonable counsel fee, and the court may, in its discretion, enter judgment .therein for any sum in addition over the amount found to be due as royalty in accordance with the terms of this title, not exceeding three times such amount.

The reproduction or rendition of a musical composition by or upon coin-operated machines shall not be deemed a public performance for profit unless a fee is charged for admission to the place where such reproduction or rendition occurs.

17 U.S.C.A. § 1(f) (Supp.1974).

3. U.S.Const. art. VI.

4. *See* note 9, *infra.*

and state's attorneys. ITMA argues that appellants should be enjoined from enforcing the Florida tape piracy law because it grants a perpetual copyright for sound recordings and thus defeats the federal policy of giving only limited copyright protection to recordings. Whereas a copyright protects a recording for only fifty-six years,[5] the Florida law gives eternal protection by completely forbidding copying another's recording for profit without consent.

The procedural history of this case is brief. On January 31, 1972, ITMA filed its complaint asking for declaratory and injunctive relief. On February 7 it filed an "application for designation as class action and for temporary restraining order prohibiting the enforcement of an unconstitutional act," which the trial court granted March 2. On March 3 defendants/appellants filed motions to dismiss on the grounds that the complaint failed to show, *inter alia*, federal jurisdiction.[6] The parties submitted briefs discussing the merits of the case and preliminary questions such as jurisdiction, ripeness, and abstention. Dispensing with further pretrial activities, the court below on June 13, 1972, issued a thirty-five page opinion declaring the Florida statute void and enjoining its enforcement.

The trial court had held no hearing, had received no evidence or affidavits,[7] and had given defendants no opportunity to file an answer. There was no discovery. No one had moved for a summary judgment or judgment on the pleadings. The court simply responded to defendants' motion to dismiss by rendering judgment for plaintiff ITMA.

■■ The abbreviated nature of the proceedings below helps to explain the fatal flaw in ITMA's case: the absence of a justiciable controversy. More precisely stated, the record does not show a controversy ripe for adjudication, and ripeness is a constitutional, jurisdictional prerequisite to both injunctive and declaratory relief. United Public Workers of America v. Mitchell, 1947, 330 U. S. 75, 67 S.Ct. 556, 91 L.Ed. 754. *See* O'Shea v. Littleton, 1974, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674.

■ The general rule for determining whether ripeness exists is easy to state and hard to apply.

The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

Aetna Life Insurance Co. v. Haworth, 1937, 300 U.S. 227, 240–241, 57 S.Ct. 461, 464, 81 L.Ed. 617. The controversy cannot be hypothetical abstract, academic or moot. *Id.*

The Supreme Court itself recognizes that its test cannot be applied with mathematical certainty.

The difference between an abstract question and a 'controversy' . . . is necessarily one of degree, and it

---

5. A copyright is good for an original term of twenty-eight years and an extension of twenty-eight years. 17 U.S.C.A. § 24 (1952).

6. In their motions to dismiss defendants contended that plaintiff had failed to state a claim; that no jurisdiction existed under 28 U.S.C.A. § 1338, the statute plaintiff relied upon; that plaintiff showed no ripe controversy; and that the trial court should abstain under the doctrine of Younger v. Harris. On appeal they raise these points and, in addition, contend that the trial court

wrongly decided the case on the merits in view of Goldstein v. California, 1973, 412 U. S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163. Here we reach only the ripeness issue and express no opinion on the others.

7. ITMA claims to have filed an affidavit, but the document it refers to is nothing more than a motion which requests the court to issue a temporary restraining order and designate the suit a class action. Insofar as ripeness is concerned, the motion's allegations add nothing to the complaint.

would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy.

Maryland Casualty Co. v. Pacific Coal & Oil Co., 1941, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, *quoted in* Golden v. Zwickler, 1969, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113.

> Justiciability is of course not a legal concept with a fixed content or susceptible of scientific verification. Its utilization is the resultant of many subtle pressures, including the appropriateness of the issues for decision by this Court and the actual hardship to the litigants of denying them the relief sought.

Poe v. Ullman, 1961, 367 U.S. 497, 508–509, 81 S.Ct. 1752, 1759, 6 L.Ed.2d 989. In fact at times the ripeness concept has proven so slippery that its application has produced contradictory results. *Compare* Poe v. Ullman, *supra, with* Epperson v. Arkansas, 1968, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228. *See* K. Davis, Administrative Law Text § 21.03 (3d ed. 1972).

■ While the case law reveals no precise ripeness formula, it indicates that one challenging a statute must demonstrate that he is immediately injured or jeopardized by its operation.[8] Absent such a showing his case is not ripe, and the court's adjudication would be an advisory opinion treating a hypothetical case.

In the past plaintiffs have demonstrated injury or jeopardy by showing a previous prosecution coupled with their continuing, or desiring to continue, the illegal activity. *See, e. g.,* Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Zwickler v. Koota, 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444. At times an official's

threat to enforce the statute against plaintiff has been enough to create ripeness if plaintiff alleged he had engaged, was engaging, or desired to engage in the prohibited activity. *See* California v. LaRue, 1972, 409 U.S. 109, 93 S.Ct. 390 n. 3, 34 L.Ed.2d 342; Lake Carriers' Association v. MacMullan, 1972, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257; Public Utilities Commission of California v. United States, 1958, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470. *Cf.* Police Department of City of Chicago v. Mosley, 1972, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212. And at other times plaintiffs have gotten by with a showing that they reside in the state whose law they challenge and that the law forbids their desired course of action. *See, e. g.,* Roe v. Wade, 1973, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147; Epperson v. Arkansas, 1968, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228.

The cases suggest that one does not present a ripe controversy if he shows no realistic possibility that the challenged statute will be enforced to his detriment. *Compare* Poe v. Ullman, 1961, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989, *with* Doe v. Bolton, 1973, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201; *see* Boyle v. Landry, 1971, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696; Younger v. Harris, 1971, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669; Public Service Commission of Utah v. Wycoff Company, 1952, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291. A specific threat of enforcement is not mandatory, but plaintiffs should somehow demonstrate that the statute poses more than an imaginary threat to their well-being. *See* Doe v. Bolton, *supra* (others prosecuted under predecessor statute).

With these observations in mind, we turn now to the instant case. The

8. The various doctrines of "standing," "ripeness," and "mootness," which this Court has evolved with particular, though not exclusive, reference to such cases are but several manifestations—each having its own "varied application"—of the primary conception that federal judicial power is to be exercised to strike down legislation, whether state or federal, only at the instance of one who is himself immediately harmed, or immediately threatened with harm, by the challenged action.
Poe v. Ullman, 1961, 367 U.S. 497, 503–504, 81 S.Ct. 1752, 1756, 6 L.Ed.2d 989.

record contains no evidence, but merely the allegations in ITMA's complaint.[9] The complaint states that ITMA's members are in the business of making tape recordings from phonograph records and selling them in interstate commerce. It does not tell us where the tapes are made or where they are sold. Nor do we know if the members desire to conduct business in Florida in the future. Thus we do not know if the members are now, or ever will be, subject to the laws of Florida.

To muster a threat of prosecution the complaint alleges:

Plaintiff is informed that the filing of criminal complaints is contemplated in that plaintiff has announced his intent of transporting and selling in interstate commerce the products which he manufactures; said sale being in violation of the aforementioned acts if said acts were lawful.

This allegation means only that plaintiff believes its members' duplicating activities, if carried on in Florida, would violate the Florida tape piracy law; it does not claim a specific threat of prosecution by Florida authorities. There is nothing in the record to show that anyone has been prosecuted, or threatened with prosecution, under the challenged law.

Had the proceedings below continued beyond the complaint and motions to dis-

miss, the record may have been developed to show a controversy ripe for adjudication. But in its present state it gives us no reason to believe that the Florida tape piracy law impinges in the least on the Association's activities. It alleges no threat of prosecution; in fact, it fails to describe the nature and location of the members' activities in sufficient detail to show that Florida law will ever govern them.[10] Since ITMA has shown only an imaginary threat to its members' well-being, we have before us nothing more than a request for an advisory ruling on the constitutionality of Florida's tape piracy law. *See* Gaillot v. Dept. of Health, Education, and Welfare, 5th Cir. 1972, 464 F.2d 598, 599, cert. denied, 409 U.S. 1060, 93 S.Ct. 559, 34 L.Ed.2d 512.

To summarize, the record fails to show a ripe controversy, and its inadequacy is due in part to the trial court's abbreviation of the proceedings below. Therefore we shall remand this case to permit the parties to establish its factual background in the record and to sharpen the issues controverted. Remanding also will permit the trial court to consider Goldstein v. California, 1973, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163, which was decided subsequent to the trial court's decision in the instant case.

Vacated and remanded.

9. Two sections of the complaint bear on the case's ripeness.

II.

At all times herein mentioned, plaintiff's members are in the business of manufacturing tape products by transferring sound recordings on phonograph records or discs with the attempt to sell or cause to be sold these products in interstate commerce.

     *     *     *     *     *

V.

. . . Plaintiff is informed that the filing of criminal complaints against plaintiff is contemplated in that plaintiff has announced his intent of transporting and selling in interstate commerce the products which he manufactures; said sale being in violation of the aforementioned acts if said acts were lawful. Such prosecution under the uncon-

stitutional provisions of said state statutes are and would be wrongful and unlawful, would create a multiplicity of harassing and vexatious litigation, are imminent and the harm, damage, costs and expenses to be suffered by plaintiff would be irreparable.

10. The opinion in Tape Industries Association of America v. Younger, C.D.Cal.1970, 316 F.Supp. 340, appeal dismissed, 401 U.S. 902, 91 S.Ct. 880, 27 L.Ed.2d 801, a "tape piracy" case in which plaintiffs sought to invalidate the California tape piracy law, provides an example of the kind of background information that is helpful in determining whether ripeness exists. There the parties had shown the location of plaintiffs' business, its mode of operation, and the prosecutor's intention to enforce the statute against plaintiffs.