Jack **CORTNER** and Jon **Silberman,**
Plaintiffs,

v.

Robert **ISRAEL; Score Productions, Inc.,**
**American Broadcasting Music, Inc., and**
**ABC Sports, Inc., Defendants.**

No. 82 Civ. 7967 (GLG).

United States District Court,
S.D. New York.

Aug. 19, 1983.

Abeles Clark & Osterberg, New York City, for plaintiffs; Stuart Prager, New York City, of counsel.

Coudert Brothers, New York City, for defendants American Broadcasting Music,

Inc. and ABC Sports, Inc.; Carleton G. Eldridge, Jr., Michael J. Calvey, Peter M. Nelson, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

This is an action for copyright infringement by Jack Cortner and Jon Silberman against Robert Israel, Score Productions, Inc., American Broadcasting Music, Inc., and ABC Sports, Inc. (The latter two defendants will hereinafter be referred to as ABC.) Before this Court is the defendants' motion to dismiss and for summary judgment.[1]

In 1976, ABC commissioned the plaintiffs to compose a musical theme for ABC's Monday Night Football television program.[2] The theme written by the plaintiffs was then used by ABC on the program from 1976 until 1979 and for part of 1980. Since the end of 1980, however, ABC has used a different, but similar, theme.

It is this latter theme about which the plaintiffs complain. They allege that it infringes the copyright on their theme, and they seek injunctive relief and damages. The defendants, on the other hand, argue, *inter alia*, that the plaintiffs have no standing to sue for copyright infringement because they assigned all legal and equitable right, title, and interest in the composition to ABC. For the reasons stated below, this Court agrees with the defendants.

Some courts have held that, under the 1909 Copyright Act,[3] an assignor of a copyright who "maintain[s] a beneficial interest under a publication contract [can] bring an infringement action against a third party . . . if his assignee [refuses] to bring such an action, and . . . if he join[s] the assignee as a party to the action." [4] 3 M. Nimmer, *Nimmer on Copyright* § 12.02, at 12–27 (1980) (footnote omitted). In *Manning v. Miller Music Corp.*, 174 F.Supp. 192 (S.D.N.Y.1959), for example, two songwriters brought an action for infringement of the copyright on a song they had written. The court held that the songwriters had standing to sue because, even though they had assigned the copyright to a music publisher, they had equitable or beneficial ownership of the copyright as a result of the substantial rights reserved to them under their contract with the publisher. *Id.* at 197; *see also Topolos v. Caldewey*, 698 F.2d 991, 994–95 (9th Cir.1983) (author of a book who had assigned the copyright on the book to the book publisher was allowed to sue for copyright infringement).

The plaintiffs argue that they are like the plaintiffs in *Manning* and *Topolos*.[5] The facts and circumstances surrounding the assignment of the plaintiffs' rights, however, lead this Court to disagree and to conclude that the plaintiffs do not have an equitable interest in the copyright sufficient to grant them standing to sue for copyright infringement.

Silberman and Cortner retained far fewer rights than the plaintiffs in *Manning* and *Topolos*. In *Manning*,

---

1. Only ABC has filed papers in connection with this motion. At oral argument, however, the attorney for Israel and Score Productions indicated that those defendants joined in ABC's motion. Thus, this Court will treat them as having joined in the motion, even though they still have not filed the appropriate papers.

2. Joe Sicurella collaborated with the plaintiffs in composing this theme. He has not, however, joined as a plaintiff in this action.

3. The plaintiffs wrote the musical theme in 1976, and ABC purchased the rights to that theme in the same year. Thus, the 1909 Act governs this lawsuit because the 1976 Copyright Act did not take effect until January 1, 1978.

4. The 1976 Copyright Act expressly provides that the legal *or beneficial* owner of a copyright can sue for infringement. 17 U.S.C. § 501(b) (1976). There is, however, no such express provision in the 1909 Act.

5. *Frederick Fell Publishers, Inc. v. Lorayne,* 422 F.Supp. 808 (S.D.N.Y.1976), another case relied upon by the plaintiffs, does not appear to be particularly germane to this case because the plaintiff in *Fell* was an exclusive licensee of the copyright that had allegedly been infringed. It is clear that, under the 1909 Act, an exclusive licensee has standing to sue for copyright infringement. 3 M. Nimmer, *supra,* § 12.02, at 12–25 to 12–26.

[t]he rights reserved to the plaintiffs include[d] (1) the right to receive royalties; (2) a restriction on assignment of certain rights by the publisher, such as motion picture rights, without plaintiffs' consent; (3) limitation on publisher's right to grant block or bulk licenses without the consent of the Songwriters Protective Association of which plaintiffs [were] members; (4) restriction on the publisher's right to grant licenses for television or for new purposes without plaintiffs' written consent; (5) the right for a limited period to secure reassignment of the song and copyright if it [was] not made productive by the publisher; (6) specific reservation of renewal rights; (7) the right to share in any damages recovered in any infringement action; [and (8) the right to bring an infringement action if the publisher refused to do so].

*Manning, supra,* 174 F.Supp. at 195. In *Topolos,* the publisher was required to publish the book within one year after the manuscript was delivered; all rights, including the copyright, were to revert to the author if the book was not kept in print; and the author retained the right to royalties, the right to block the licensing of certain rights, and the right to bring a copyright infringement action if the publisher refused to do so.[6] In this case, on the other hand, the plaintiffs assigned to ABC "all of their right, title and interest, both legal and equitable, [in the theme]," Shubert Affidavit, Exhibit B, cl. 2, in return for a fee, the right to receive royalties, and the right to share in any profits from an infringement suit. They retained no right to control future uses of the theme. They retained no right to reclaim ownership of the copyright if ABC was not making it productive. (Indeed, ABC was not obligated to make any use of the theme.) They retained no right to bring a suit for copyright infringement. In sum, when the contracts were executed, the theme became ABC's "sole and exclusive property to do with as [it] wish[ed]." *Id.,* Exhibit A, cl. 2.[7]

Moreover, in cases in which beneficial ownership has been found, it appears that the author assigned the copyright with the expectation that the assignee would exploit the work for their joint benefit. The plaintiffs' relationship with ABC, however, was "essentially a one-shot deal" in which ABC commissioned the plaintiffs to write a theme song for use only on ABC's Monday Night Football television program and agreed to underwrite the costs of producing the song, up to $9,000.[8] As the defendants aptly point out, "[p]laintiffs simply could not have had the same far-reaching expectations of 'beneficial ownership' going into, or even coming out of, this arrangement for services rendered with respect to the creation of the Monday Night Football theme as might the litigants have had in *Manning* and like cases." Defendants' Memorandum in Support of Their Motion at 5. *See Bertolino v. Italian Line,* 414 F.Supp. 279 (S.D. N.Y.1976).[9]

---

**6.** This information was not contained in the Ninth Circuit's opinion, but it was provided by the parties at the Court's request. *See also National Bank of Commerce v. Shaklee Corp.,* 503 F.Supp. 533, 543 (W.D.Tex.1980) (author of a book had equitable ownership of the copyright because she retained the right to royalties, the right to preclude various uses of her material, and the right to reclaim the copyright at the expiration of the agreement).

**7.** The rights of the parties were defined by three contracts that were executed contemporaneously. *See* Schubert Affidavit, Exhibits A, B, and C.

**8.** *See* Schubert Affidavit, Exhibit A, cl. 1; *id.,* cl. 6.

**9.** In *Bertolino,* the plaintiff contracted with two others to produce phonograph records. According to the court, the contract essentially provided that plaintiff would produce not less than sixty compositions, perform two personal concerts at New York's Carnegie Hall and in Pittsburgh, and receive approximately 2.7% of the retail selling price of all phonograph records made and sold from the master recordings produced under the contract. Further, Mr. Wiegand agreed to underwrite the production of the records to the extent of $170,000. In return, the Wiegands were given the right to supervise production of the recordings, direct where the net profits from personal appearances would be distributed, and receive weekly from Bertolino an accounting of his finances. Most important of all the contractual provisions was clause 2:

This Court believes that the concept of beneficial or equitable ownership would be stretched a bit far if the plaintiffs in this case were allowed to sue for copyright infringement. Whatever rights the plaintiffs retained can be enforced in an action grounded in contract, not copyright. Accordingly, the defendants' motion is granted and the action is dismissed.[10]

SO ORDERED.

---

"2. You hereby agree that we, MYRON WIEGAND and SARA WIEGAND, shall be the exclusive owners of all right, title, interest in and to said master recordings, free of any claim whatsoever by you."

*Id.* at 281. The court held that the plaintiff had no standing to sue for infringement of a copyright on a song produced pursuant to this contract. *Id.* at 284–85.

10. The defendants also argue that, even if the plaintiffs had standing to sue, they could not succeed on an infringement claim because ABC, the copyright owner, authorized the creation of the allegedly infringing theme as a derivative work based on the theme written by the plaintiffs. Although the Court need not consider this argument, it does appear to have considerable merit.