Jimmy JONES and Otis Blackwell, Plaintiffs,

v.

VIRGIN RECORDS, LTD., Epic Records, a division of CBS, Inc., Virgin Music Publishing Ltd., Warner Tamerlane Music, a division of Warner Communications, Inc., and CBS Catalogue Partnership, Defendants.

No. 84 Civ. 5907 (MJL).

United States District Court, S.D. New York.

March 4, 1986.

As Amended April 26, 1986.

Feinman & Krasilovsky by Andrew J. Feinman, New York City, for plaintiffs.

Fischbach, Mahoney, Fischbach & Weiner by Probstein & Napolitano, New York City, for defendants Virgin Records Ltd. and Virgin Music Publishers Ltd.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

This copyright infringement action involves two of the most popular songs in recent years. The plaintiffs are the composers of the song "Handyman." They seek injunctive relief, actual damages, prof-

its and reasonable attorney's fees and costs for the alleged infringement of the copyright in "Handyman" by marketing of the defendant's song "Karma Chameleon."

Defendants move for summary judgment. For the reasons stated below, summary judgment is denied.

## BACKGROUND

The plaintiffs, Jimmy Jones ("Jones") and Otis Blackwell ("Blackwell"), composed the song "Handyman" in 1959. In June of that year, Jones and Blackwell assigned their rights in this work to Shalimar Music Corporation ("Shalimar") and its successors and assigns expressly retaining the right to receive royalties.

In September of 1959, Shalimar registered "Handyman" and filed sheet music of this version ("1959 version") with the Copyright Office pursuant to the 1909 Copyright Act ("1959 registration"). Thereafter, Shalimar assigned its interest in the song and through a series of conveyances, the composition and the copyright therein were acquired and are currently owned by CBS Catalogue Partnership, a subsidiary of CBS, Inc. Printed sheet music of the 1959 version was published in 1964 by Travis Music Company and in 1977 by United Music Publishing Group.

In 1960, Jones recorded the song "Handyman" on phonorecords which were sold to the general public by Cub Records. This recorded version ("1960 version") of the song contained additional words and music not found in the 1959 version filed with the Copyright Office. The 1960 version achieved considerable popularity and was later recorded by Del Shannon in 1964 and James Taylor in 1977 with similar success.[1]

The additional words and music included in all three recordings of the 1960 version

consisted of an eight measure chorus consisting of the following words:

Come-a, come-a, come-a
Come-a, come, come
yeah, yeah, yeah
Come-a, come-a, come-a
Come-a, come, come
Hold on, They'll come running to me
Yeah, Yeah, Yeah
Yeah, Yeah, Yeah.

It appears that the 1960 version was never reduced to printed sheet music.[2]

The allegedly infringing song, "Karma Chameleon", was written and recorded by rock personality "Boy George" (George O'Dowd) and the members of his band, Culture Club, in 1983. By February of 1984, "Karma Chameleon" reached number one on the national charts.

Plaintiffs contend that the portion of the chorus which was added to the 1960 version of "Handyman" namely: "come-a, come-a, come-a, come-a-" is infringed by the chorus of "Karma Chameleon" which consists of the words:

Karma, Karma, Karma, Karma
Karma, Chameleon.

Plaintiffs argue that the allegedly infringed portion of the 1960 version is an important part of that work which constitutes the "hook" or "eye-catcher" and suggest that it was in large part responsible for the financial success of the song.

The 1960 version was not registered with the Copyright Office until August 10, 1984, ("1984 registration")[3] when a claim of copyright in the 1960 version was filed in the name of CBS Catalogue Partnership.

Jones and Blackwell instituted this suit for infringement against Virgin Records, Ltd. and Epic Records (issuers of the phonorecords on which "Karma Chameleon" is recorded), Virgin Music Publishing, Ltd.

---

1. "Handyman" reached number 2 on the Billboard Magazine Chart of best selling records in 1960 as performed by Jimmy Jones, number 22 in 1964 as performed by Del Shannon and number 4 in 1977 as performed by James Taylor.

2. Although plaintiffs' papers are not clear, they seem to consider the 1960 version to be a derivative work, separate and distinct from the 1959 version.

3. It appears that Jones and Blackwell filed the claim of copyright in the name of CBS Catalogue Partnership, the legal owners of the copyright, in anticipation of this action.

and Warner Tamerlane Music (purported owners of the copyright in "Karma Chameleon") and CBS Catalogue Partnership (joined as a nominal defendant, *see infra*, unnumbered n. at 1160).

Defendants Virgin Music Publishing Ltd., Inc. and Virgin Records Ltd. now move for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support of their motion, defendants first contend that since plaintiffs have assigned their copyright they have no standing to sue for infringement or alternatively, that they have not sufficiently alleged such standing. Second, defendants assert that the song "Handyman" has entered the public domain since the plaintiffs failed to affix copyright notice to the phonorecords and the song was published without statutory copyright protection. Third, defendants claim that the plaintiffs' 1984 copyright registration of the 1960 version was ineffective. Finally, defendants maintain that the plaintiffs are estopped from alleging infringement. In the alternative, defendants request that should this Court find that the song "Handyman" is in fact protected by copyright, the Court rule that the plaintiffs are not entitled to statutory damages or attorney's fees.

Despite the obvious difficulty plaintiffs will encounter proving that "Karma Chameleon" infringes the 1960 version of "Handyman," defendants concede that infringement is a question of fact which must be determined by the finder of fact at trial and is not an issue addressable in a Rule 56 proceeding.

## DISCUSSION

### a. *Standing to Sue*

As a threshold issue, defendants maintain that the plaintiffs do not have standing to sue since they assigned the legal title to and the copyright in the work. Plaintiffs counter that when they assigned the song to Shalimar and its assigns, they retained a beneficial interest in that work sufficient to maintain this action.[4]

Section 501(b) of the 1976 Copyright Act provides that "[t]he legal or beneficial owner of an exclusive right under copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b) (1976). A beneficial owner of an exclusive right includes "an author who ha[s] parted with legal title to the copyright in exchange for percentage royalties based on fees or license sales." H.R.Rep. No. 1476, 94th Cong., 2nd Sess. 159 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5659, 5775.

This definition was recently adopted by the Court of Appeals for the Second Circuit in *Cortner v. Israel*, 732 F.2d 267 (2nd Cir.1984), *rev'g*, 568 F.Supp. 1217 (S.D.N.Y. 1983).

In *Cortner*, the plaintiffs assigned their composition and all rights therein to ABC in exchange for ABC's obligation to pay royalties. *Cortner*, 732 F.2d at 269. The Court of Appeals held that the composer's contingent right to receive royalties constituted a sufficient beneficial interest to give them standing to seek relief under both the 1909 and 1976 Copyright Acts. *Cortner*, 732 F.2d at 271.

In the instant case, plaintiffs have retained a number of rights in the song including the right to receive royalties based on the sales of the work.[5] Accord-

---

**4.** The contract of assignment is silent on the issue of derivative or altered versions of the assigned work. For the purposes of this discussion, the Court will presume that the assignment contract contemplated all versions of the work.

**5.** The plaintiffs also retained the right to bring suit for copyright infringement should the assignee fail to do so and to participate in judgments recovered in infringement actions brought by either party; retained the right to reclaim, after notice, all rights in the work upon failure of the assignee to publish or produce a phonograph record of the work within a specified period of time; and retained the right to cancel the agreement, all rights reverting to the composer, should the assignee fail to render royalty statements to the composers, pay the royalties due, or provide access to the assignee's books, in the manner prescribed by the contract.

ingly, the plaintiffs have retained a sufficient beneficial interest in the song to have standing to sue for any infringement of the copyright in that work.

Defendants nevertheless contend that the plaintiffs have not sufficiently alleged or proven the existence of any present beneficial interest. Defendants would argue that the plaintiffs must produce evidence relating to the subsequent chain of ownership which would establish that their interest in the song still exists.

■ Admittedly, plaintiffs have not submitted evidence of a present beneficial interest in the song. Plaintiffs have however, attached to their affidavit in opposition to defendants' motion for summary judgment the original contract in which they retained numerous rights in "Handyman". *See supra* unnumbered n. at 1156. This evidence is sufficient to defeat a motion for summary judgment. At this early stage in the proceedings, plaintiffs may not be denied the opportunity to provide evidence to support a claim of a present beneficial interest. *Brennan v. Paramount Pictures Corp.*, 209 F.Supp. 150, 152 (S.D. N.Y.1962). *See also Southern Music Pub. Co. v. Walt Disney Prod.*, 73 F.Supp. 580, 583 (S.D.N.Y.1947) (attaching assignment contract to complaint is sufficient where it tends to support plaintiff's allegations).

### b. *Public Domain*

#### 1. Notice

Defendants contend that the plaintiffs' failure to affix a notice of copyright in the song "Handyman" to the 1960 phonorecords ceded the work to the public domain. This contention is meritless.

Even under the more restrictive criteria applied by the District Court in *Cortner*, plaintiffs have retained a sufficient beneficial interest in the song to bring suit for copyright infringement. *See Cortner*, 568 F.Supp. at 1218–19.

6. Section 9 of the 1909 Copyright Act required that notice of copyright be affixed to each published copy of a work to secure statutory copyright protection in that copy. 17 U.S.C. § 9 (1909).

■ In *White-Smith Publishing Co. v. Apollo Co.*, 209 U.S. 1, 28 S.Ct. 319, 52 L.Ed. 655 (1909), the United States Supreme Court held that a music roll (and by extension a phonorecord) is not a copy within the meaning of the Copyright Act since a copy must be intelligible and in a form which can be seen or read. *White-Smith Pub. Co.*, 209 U.S. at 17, 28 S.Ct. at 323. The 1909 Copyright Act implicitly adopted this definition of "copy", 1 Nimmer § 2.03[B][1] (1985), and did not require that a phonorecord have notice of copyright affixed to it in order to protect the underlying musical work recorded thereon. 3 Nimmer § 7.12[B] (1985).[6] The failure to affix notice to the phonorecord therefore, did not affect any statutory or common law copyright protection otherwise applicable to the underlying work. *Buck v. Heretis*, 24 F.2d 876 (E.D.S.C.1928); *Buck v. Lester*, 24 F.2d 877 (E.D.S.C.1928). *See* H.R.Rep. No. 1476, 94th Cong., 2nd Sess. 145 (1976). The current act similarly does not require that notice of copyright in a musical work be affixed to a phonorecord in order to protect the *underlying* musical work.[7] H.R.Rep. No. 1476, 94th Cong., 2nd Sess. 145 (1976); 2 Nimmer § 7.06[B] (1985). *Cf. U.S. v. Taxe*, 540 F.2d 961, 966 (9th Cir. 1976), *cert. denied*, 429 U.S. 1124, 97 S.Ct. 1163, 51 L.Ed.2d 575 (1976).

Plaintiffs' failure to affix notice of copyright in the song "Handyman" to the phonorecord on which the song was recorded does not therefore affect any statutory or common law copyright in that work.

### 2. *Publication under the 1909 Act*

The 1909 Copyright Act preempted most then existing common law and statutory copyright protection. Congress explicitly

7. A sound recording is the physical work which results from the fixation of sounds, such as musical works, onto material objects (examples include casette tapes and records). 17 U.S.C. § 101 (1976). Notice of copyright must be affixed to the phonorecord to protect the copyright in that sound recording. 17 U.S.C. § 402 (1976).

exempted from such preemption common law copyright in unpublished works. 17 U.S.C. § 2 (1909). This common law copyright attached from the time of a work's creation until the work was published or was registered as a published or unpublished work under the 1909 Act. 1 Nimmer § 4.01[B] (1985). Thus, common law copyright was extinguished upon publication or registration in compliance with the 1909 Act. *Roy Export Co. Estab. of Vaduz v. CBS, Inc.,* 672 F.2d 1095, 1101 (2d Cir. 1982).

Congress declined to undertake the difficult task of defining publication for the purpose of the 1909 Act,[8] leaving that responsibility to the judiciary. The results have not been uniform.

Publication has been construed as any act by which the copyright owner intentionally makes the musical work available to the public by any means including the sale of phonorecords on which the musical work has been recorded.[9] Other cases hold that publication occurs only when the musical work is reduced to a tangible form, such as sheet music, and is distributed to the public. The Court of Appeals for the Second Circuit has adopted and incorporated the latter definition as articulated by then District Judge Gurfein in *Rosette v. Rainbo Record Mfg. Corp.,* 354 F.Supp. 1183 (S.D. N.Y.1973), *aff'd per curiam,* 546 F.2d 461 (2d Cir.1976) (the Second Circuit "affirmed on the opinion of Judge Gurfein.") Noting that the question had been contentiously debated for decades, Judge Gurfein reasoned that since a live performance of a work does not constitute its publication, a recording of that performance, although more permanent in nature, is similarly not a publication.[10] Accordingly, Judge Gurfein held that recording and selling phonorecords does not constitute the publication of the previously unpublished musical work contained therein, *Rosette,* 354 F.Supp. at 1190, 1192, and the common law copyright in such work therefore is not divested. *Rosette,* 354 F.Supp. at 1193.

◼ The papers before the Court indicate that the 1960 version of the song "Handyman" was placed before the public only in the form of phonorecords.[11] Accordingly, the 1960 version was not published and did not lose its common law copyright protection under the 1909 Act as an unpublished work.[12]

Defendants urge this Court to disregard the *Rosette* decision but fail to offer any justification for doing so. While we are aware that *Rosette* is not without its critics and is not followed by a majority of district courts in other circuits, this Court believes that any departure from the established

---

8. *But see, infra* unnumbered n. at 1161 and accompanying text.

9. *See International Tape Mfrs. Ass'n v. Gerstein,* 344 F.Supp. 38 (S.D.Fla.1972), *vacated on other grounds,* 494 F.2d 25 (5th Cir.1974); *Mills Music Inc. v. Cromwell Music Inc.,* 126 F.Supp. 54 (S.D.N.Y.1954); *Shapiro, Bernstein & Co. v. Miracle Record Co.,* 91 F.Supp. 473 (N.D.Ill.1950).

10. Judge Gurfein also stated that "[t]he argument that the permanancy of the recording makes it more than a mere performance is an argument that the Congress did not accept or it could have easily made such an enactment [in the 1909 Copyright Act]." *Rosette,* 354 F.Supp. at 1191–92. Judge Gurfein added that:
[In *White-Smith Music Pub. Co. v. Apollo,* 209 U.S. 1, 28 S.Ct. 319, 52 L.Ed.2d 655 (1908)] the Court held that a music roll for mechanical pianos did not constitute a "copy" of the recorded music and hence was not an in-

fringement of it. From this result it was logical to conclude that if the infringing music roll was not a copy of the composition so as to cast its maker in liability, the creation of a music roll by the author himself would not make it a "copy" of his work and hence not a publication of it.
*Rosette,* 354 F.Supp. at 1189.

11. The Court takes judicial notice of the fact that the 1960 version was printed (with notice of copyright) on the album cover of "JT", James Taylor's successful 1977 recording. Neither party has addressed this issue and the Court need not consider it.

12. Nor was the 1960 version of the song registered as a published work, 17 U.S.C. § 12 (1909), or as an unpublished work. 17 U.S.C. § 11 (1909). In either case, the common law copyright in the song would have been terminated.

law of this Circuit must be made by the Court of Appeals.[13]

### c. *Copyright Registration*

▮ Defendants contend that the plaintiffs' 1984 registration of the 1960 version was ineffective since a supplemental registration was employed to add additional words and music to the 1959 registration.[14] Thus, defendants contend that the plaintiffs cannot bring suit for the infringement of the 1960 version because it was not registered with the Copyright Office. *See* 17 U.S.C. § 411(a) (1976). Defendants are correct that a supplemental registration is not appropriate to reflect changes in the content of a work. 37 C.F.R. § 201.-5(b)(2)(iii) (1985).[15] Had the plaintiffs filed such a supplemental registration, defendants' argument might have some merit and

the plaintiffs' suit may have been barred by section 411(a) of the 1976 Copyright Act. This, however, is not before this Court.

The pleadings before this Court indicate that in fact no supplemental registration was filed. Rather, the plaintiffs intended to and did register a derivative work claim of copyright in the 1960 version of the song "Handyman". Utilizing application form "PA/PAU," (the form required to obtain a "basic" registration for a musical work),[16] plaintiffs properly filed a claim of copyright in the 1960 version. They clearly indicated that the 1960 version was a derivative work of the 1959 version and provided the necessary information to complete such a registration.[17]

---

**13.** The *Rosette* analysis is particularly merited in the instant case. Should the Court find that the work was published, it would lead to a divestment of the copyright in the 1960 version. Where a court finds that a work's publication is divestive rather than investive (exchanging statutory protection for common law protection) more rigorous standards must be applied to protect the copyright in the work. *See Roy Export Co. Estab. of Vaduz v. CBS, Inc.,* 672 F.2d 1095 (2d Cir.1982); *American Visuals Corp. v. Holland,* 239 F.2d 740 (2d Cir.1956). Moreover, musical compositions often go through numerous revisions. Compelling the owner of the copyright to deposit each revision pursuant to section 12 of the 1909 Act would be unwise and unmanageable. If the copyright owner failed to deposit each revision, the work could have been automatically forfeited into the public domain. *See* B. Kaplan, *Publication in Copyright Law: The Question of Phonograph Records,* 13 U.Pa.L. Rev. 469, 478–79 (1955).

**14.** Defendants also assert that since plaintiffs did not register the work until August 10, 1984, they lost whatever opportunity they had to obtain statutory copyright protection because they failed to comply with the filing requirements of section 405 of the 1976 Copyright Act.
Defendants' contention is without merit. Section 405 is concerned exclusively with the notice of copyright requirements of Sections 401, 402 and 403 of the 1976 Act. These sections mandate the fixation of notice of copyright to various types of copies of a copyrightable work and do not address the issue of copyright registration.
Section 408 governs copyright registration and states in pertinent part that "[a]t any time during the subsistence of copyright in any published or unpublished work, the owner of copyright or of any exclusive right in the work may obtain

registration of the copyright claim.... [S]uch registration is not a condition of copyright protection." 17 U.S.C. § 408(a) (1976). A work need only be registered before an action for copyright infringement may be initiated. 17 U.S.C. § 411(a) (1976).

**15.** Section 408(d) provides that the Register of Copyrights may, by regulation, establish procedures for supplemental registration to correct an error or amplify information in the original registration. 17 U.S.C. § 408(d) (1976). Section 201.5 of the Copyright Office Rules and Regulations states that a supplemental registration authorized by section 408(d) of the 1976 Copyright Act may be used to correct information which was incorrect at the time the basic registration was made, 37 C.F.R. § 201.5(b)(2)(i) (1985), or to reflect omitted information, or certain changes in facts that have occurred since the original registration, 37 C.F.R. § 201.-5(b)(2)(ii) (1985), but is not appropriate "to reflect changes in the content of a work." 37 C.F.R. § 201.5(b)(2)(iii) (1985).

**16.** 37 C.F.R. §§ 201.5(a)(1)(i); 202.3(b)(1)(ii), (b)(2) (1985).

**17.** Section 409 of the 1976 Act provides in pertinent part that:
The application for copyright registration shall be made on a form prescribed by the Register of Copyrights and shall include:
(1) the name and address of the copyright claimant:
(2) in the case of a work other than an anonymous or pseudonymous work, the name and nationality or domicile of the author or authors, and, if one or more of the authors is dead, the dates of their deaths;
(3) if the work is anonymous or pseudonymous, the nationality or domicile of the author or authors;

Although defendants baldly assert that the 1984 registration was a "supplemental" registration, they fail to present any support for their position. Plaintiffs did nothing to suggest that the registration was intended to be supplemental rather than derivative. For example, plaintiffs did not utilize the applicable form, "CA", to apply for a supplemental registration as required by the Copyright Office Rules and Regulations, 37 C.F.R. § 201.5(c)(2) (1985), nor did they provide information necessary to modify non-substantive information in a previous registration. *See* 37 C.F.R. 201.-5(c)(1)(v), (vi) (1985).

■ This Court finds that plaintiffs have registered the 1960 version of the song "Handyman" as a derivative work, effective August 10, 1985. Accordingly, the plaintiffs have complied with the requirements of section 411 of the 1976 Copyright Act and may bring suit for infringement of the properly registered copyright.

d. *Estoppel*

■ Defendants assert that even if the 1960 version is protected by copyright, the plaintiffs should be estopped from bringing

> (4) in the case of a work made for hire, a statement to this effect;
> (5) if the copyright claimant is not the author, a brief statement of how the claimant obtained ownership of the copyright;
> (6) the title of the work, together with any previous or alternative titles under which the work can be identified;
> (7) the year in which creation of the work was completed;
> (8) if the work has been published, the date and nation of its first publication;
> (9) in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered;
>
> 17 U.S.C. § 409 (1976).

**18.** In a letter to this Court dated March 29, 1985, Gail I. Edwin, Esq., attorney for CBS, Inc. and CBS Catalogue Partnership, asserted that these defendants are separate and distinct corporate entities. (CBS Catalogue Partnership, the current owner of the copyright in the song "Handyman", was joined as a defendant to the action presumably because prior to the 1976 Copyright Act, a beneficial owner could only bring an

suit. Defendants claim that CBS, Inc., through its subsidiary CBS Catalogue Partnership, is the current owner of the copyright in the song "Handyman". Defendants contend that since the allegedly infringing song was released by Epic Records, also a purported division of CBS, Inc., plaintiffs should be estopped from alleging infringement in that CBS itself participated in the alleged infringement.

Defendants have failed to present any evidence that CBS Catalogue Partnership and Epic Records share a corporate identity through CBS, Inc.[18] Moreover, defendants have not presented any evidence necessary to support an estoppel defense.[19] Accordingly summary judgment may not be granted on this basis.

e. *Damages*

Defendants request that should the motion for summary judgment be denied, the Court rule that plaintiffs are not entitled to statutory damages or attorney's fees for any infringement occurring before August 10, 1984, the effective date of the plaintiffs' registration of the 1960 version.[20]

infringement action after the assignee had refused to bring such an action and the beneficial owner joined the assignee as a party defendant to the action. *See Manning v. Miller Music Corp.*, 174 F.Supp. 192 (S.D.N.Y.1959)).

**19.** The party seeking the estoppel defense must show that:
> (1) the party to be estopped must know the facts of the defendant's infringing conduct; (2) he must intend that his conduct be acted on or must so act that the party asserting the estoppel (usually the defendant) has a right to believe it is so intended; (3) the defendants must be ignorant of the true facts; (4) the defendant must [detrimentally] rely on the plaintiff's conduct [or inaction]....

*Rohauer v. Killiam Shows, Inc.*, 379 F.Supp. 723, 731 (S.D.N.Y.1974), *rev'd on other grounds*, 551 F.2d 484 (2d Cir.1977); (citing *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100 (9th Cir.1960), *cert. denied*, 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960). *See also, Lottie Joplin Trust v. Crown Publishers, Inc.*, 456 F.Supp. 531 (S.D.N.Y.1977), *aff'd*, 592 F.2d 651 (2d Cir. 1978); 3 Nimmer § 13.07 (1985).

**20.** Plaintiffs have only requested attorney's fees at this time and have not requested statutory

The 1976 Copyright Act was intended to preserve the remedies available at common law for the infringement of unpublished works, but was not intended to grant these works the special statutory damages established by the 1976 Act unless the plaintiff had complied with the Act by registering the claim in the copyright. H.R.Rep. No. 1476, 94th Cong., 2nd Sess. 158 (1976). Section 412 of the 1976 Act provides that:

> [No] award of statutory damages or of attorney's fees as provided by sections 504 and 505 shall be made for—
>
> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2) any infringement of copyright commenced after first publication of the work before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412 (1976).[21]

Congress has defined publication for the purposes of the 1976 Copyright Act as the distribution of or offering to distribute copies or phonorecords.[22] Under Section 412, publication and registration determine the availability of statutory remedies.

If the 1960 version remained unpublished and unregistered after the effective date of the 1976 Act (January 1, 1978), no statutory damages or attorney's fees are available. If the 1960 version was later registered and remained unpublished, statutory remedies are available only for infringement occurring after the effective date of the registration.

 If the 1960 version was published (distributed or offered for distribution) after the effective date of the 1976 Act and the work was unregistered, no statutory damages or attorney's fees are available. However, if the 1960 version was registered within three months of the first publication after the effective date of the Act (January 1, 1978), then statutory damages and attorney's fees are available for infringement occurring after that first publication.

The parties concede that the 1960 version was not registered until August 10, 1984. However, defendants have not alleged that the 1960 version was distributed or offered for distribution after January 1, 1978. Accordingly, defendants' request for a ruling limiting plaintiffs' remedies must be denied at this time.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is denied. Defendants' request for a ruling limiting the remedies available to plaintiffs is denied. The parties are to submit a joint pretrial order within fifty days.

It Is So Ordered.

---

damages. Since the plaintiffs may elect statutory damages at any time before final judgment, 17 U.S.C. § 504(c)(1) (1976), and the standard governing the availability of statutory damages and attorney's fees is the same, the Court will address the issue at this time.

21. Section 504 establishes the remedies available for copyright infringement under the 1976 Act. The statute allows damages in the form of actual damages and any profits realized by the infringing party attributable to the infringing action. 17 U.S.C. § 504(b) (1976). Alternatively, plaintiffs may elect to recover statutory dam-

ages of two hundred fifty to ten thousand dollars for all proven infringements involved in the action. 17 U.S.C. § 504(c)(1) (1976).

22. Section 101 states in pertinent part that:
"Publication" is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.
17 U.S.C. § 101 (1976).